KINYON *v.* CUNNINGHAM.

1. REFORMATION OF INSTRUMENTS — MISTAKE — MUTUALITY — EVIDENCE.

   To justify the reformation of a written contract upon the ground of mistake in drafting it, the alleged mistake must be proved by clear and satisfactory evidence, and must have been mutual and common to both parties to the contract.

2. SAME—EVIDENCE—SUFFICIENCY.

   On a bill to reform a contract for the sale of land on the ground of mutual mistake, evidence examined, and *held*, insufficient to support a decree for complainant with respect to certain coal sheds on land adjoining that sold, but to warrant a decree awarding complainant defendant's interest in an alley adjoining same.

Appeal from Hillsdale; Chester, J.   Submitted June 15, 1906.   (Docket No. 65.)   Decided November 13, 1906.

Bill by Daniel B. Kinyon against Isaiah Cunningham and Esther Cunningham to reform a land contract. From a decree for complainant, defendants appeal.   Modified and affirmed.

*F. A. Lyon* and *Merton Fitzpatrick*, for complainant.
*H. W. Cavanaugh*, for defendants.

OSTRANDER, J.   Defendant Cunningham was owner and possessed of certain real estate in the city of Hillsdale. Just north of the said premises is a strip of land two rods wide, called and known as " Warehouse alley," which strip the bill charges was owned. by the city of Hillsdale. North of the alley is land owned by the Lake Shore & Michigan Southern Railway Company, adjacent to the tracks of that company.   Defendant had a lease of some of the land north of said alley and of the north one-half

of the alley from the Lake Shore & Michigan Southern Railway Company, the lease containing a covenant that the land should not be underlet or the lease assigned without the consent, in writing, of the said railway company, and a further covenant that the lessee would erect, finish, put to use, and maintain, upon the leased premises, a coal shed. Other provisions of the lease indicate that the land was leased for a nominal rental to secure the carrying on of a business out of which profit would accrue to the. said company. The lease was made for one year and had been twice renewed, the last time for one year from June 16, 1905. Defendant had sent in the lease for renewal before June 16th. He actually signed for the last renewal on June 29th. Defendant carried on the business of selling coal and wood, using, in so doing, a portion of the premises first above mentioned, the alley, and the leased land. He had built a series of sheds upon his own land and upon the leased land and said alley. It is evident that he understood that he might by occupancy come some day to have a title to a portion of the alley.

It is the contention of complainant that he bargained with defendant to purchase all of the property, except stock on hand, which defendant owned and used in his business, including the two rods strip of land and the sheds on that land and on the leased land, and that by a mutual mistake the written executory contract of purchase described only the premises first above mentioned. The contract in question was dated June 19, 1905. The bill of complaint was filed September 29, 1905, and prays that defendants be required to execute and deliver to complainant a contract in conformity with the alleged bargain. There was a general prayer for other or further relief. The proofs were taken in open court and an opinion given favorable to complainant. When the decree (which was signed) was proposed, it contained the finding that the property conveyed and agreed to be conveyed by defendants to complainant included, besides that described in the written contract, all the right, title, and interest of

defendants in and to Warehouse alley, all of the buildings in said alley and on the leased grounds and the term or leasehold created by the deed of lease which has been mentioned, and required defendants to execute a contract in all respects the same as the one executed in June, 1905, except the descriptions of property which were to be corrected, etc. It was objected that the bill did not ask for transfer of the leasehold interest, whereupon the court stated that complainant might amend his bill to make it accord with the testimony given, overruled the objection, and signed the decree as presented. Whether the bill was amended does not appear.

The questions involved are questions of fact. The single rule of law to which it is proper to call attention is that, to justify the reformation of a written contract upon the ground of mistake in drafting the same, the alleged mistake must be proved by clear and satisfactory evidence, and the mistake must have been mutual and common to both parties to the contract. *Burns* v. *Caskey*, 100 Mich. 94; *Shepard* v. *Shepard*, 36 Mich. 179. The argument of counsel for complainant proceeds upon an assumption, which it is evident the court below also used, for which I find no warrant or support. Complainant, like defendant, was, and is, a dealer in coal, and, at the time the bargain in question was made, occupied, in the conduct of that business, other premises. If, and the assumption referred to involves this, it had been understood by defendant that complainant was purchasing his premises for the purpose of carrying on the coal business there, some support might be found for the inference that defendant must have also understood that complainant supposed that he was purchasing the paraphernalia of the business, including the coal sheds along the railroad tracks. Indeed, the bill of complaint charges that the property bargained for was inclusive of "all things in connection" with said coal and wood business except the coal and wood then on hand. It is undisputed that the defendant had no title to any land excepting that described in the contract. It is

undisputed that, when he gave the real estate broker a price upon his property, nothing whatever was said (indeed, no mention was at any time made before the execution of the contract) about the coal sheds or any sheds, nor did the defendant then know to whom the premises were to be sold. He was told by the broker that the purchaser was a business man in Hillsdale who intended the erection upon the property of a business block to cost $5,-000. It does not appear that at any time prior to the execution of the written contract was defendant informed that complainant proposed to use the premises to carry on the coal business. It is true, defendant had stated that he was bothered about getting hard coal and that he should go out of the business of dealing in hard coal. He also said he should continue to deal in soft coal and wood. But it does not appear that complainant knew anything about defendant's business projects or had heard of these statements. The statements were made to no one who had any interest in the subject, were tentative, and must have been so considered by those who heard them. Defendant produced his deed of the premises to the scrivener, who followed the description of the property therein given. Defendant owned no other real estate in the vicinity. He covenanted to convey to complainant a fee-simple title to the premises. I am satisfied that defendant bargained and valued the precise premises described in the contract. If there was a mistake of fact, it arose out of complainant's belief—he cannot be said to have had an understanding of the matter—that the sheds in question were on the land described in the deed to defendant and in the written contract. He knew that if they were not on that land they were not described in the contract. The premises described are, and the dimensions are stated in the contract, 101 feet by 9 rods in size, the 9 rods dimension being on Union street and running from the corner of lot 194. Complainant had lived in Hillsdale for upwards of 30 years, knew that the sheds in question were built to within six feet of the railroad track, did not know, he

testifies, they were on railroad property, and had never heard of Warehouse alley.

" Mr. Howard [the broker] came to me on the 19th of June last and wanted to buy a strip of land from me, and he did not buy it.   There was no particular strip of land; he said he had a customer that wanted to buy a strip of land, and he didn't say what for, and I think I mentioned to him, I says, ' I haven't got land enough, but I would like to buy out the Cunningham corner.'   That was the first time it ever entered my head, and he went, it seems,. and bargained for it, although I didn't suppose he could buy it."

Mr. Howard testifies that he told complainant:

" ' I think I can buy it for you.'   By this I meant his business and property, and I soon after told Mr. Kinyon what it would cost him.   *   *   *   After talking with Mr. Cunningham I went back to Mr. Kinyon and I says, ' You can buy it for so and so, for so much money.' "

No one had asked Mr. Howard to buy or had expressed the desire to purchase the business of Mr. Cunningham. The actual conversations, so far as related, imply neither a proposal to buy the business or an offer to sell the business.   Complainant testified:

" When I signed the contract I certainly did suppose that I was getting the sheds in question or I wouldn't have bought the property.   That is the main thing I wanted it for.   *   *   *   It would materially depreciate the value of that property for coal business if I didn't have those sheds, and it would cost probably 25 cents a ton to move that coal and get it in my sheds."

It is unfortunate that complainant did not assure himself that he was securing the *main thing* for which he purchased the property, and that a dimension of 9 rods was not one of more than 11 rods.

The decree cannot be sustained by a consideration of what was said and done by the parties to the time the contract was executed and delivered.   A careful analysis of the testimony will show that, setting aside the idea that complainant was purchasing the property and business

location of a rival with the avowed purpose of continuing the business, there remains nothing leading to the conclusion that the right of way sheds were considered, nor is there an intimation that the property purchased is worth less than the agreed price. What the parties said and did after the contract was executed is not convincing in favor of either. I am not able to say that there was a mutual mistake of fact. It is not claimed there was any fraud.

A decree should be entered reversing the decree below, and dismissing the bill of complaint, with costs of both courts to defendants.

GRANT and HOOKER, JJ., concurred with OSTRANDER, J.

BLAIR, J. I concur in the opinion of Mr. Justice OSTRANDER that the bill of complaint was not sustained by the proofs as to the averment that the contract was mutually intended to cover the sheds on the railroad land. I am of the opinion that the contract was intended to relate to real estate alone, and was not intended to convey any sheds not standing upon the land conveyed. While the complainant may have supposed that the sheds upon the railroad land were upon the land described in the contract, the defendant certainly knew that they were not, and I am not satisfied from the evidence that he intended to convey, or supposed he had conveyed, them by the contract.

I am satisfied, however, that the defendant intended to convey all of the land that he owned or supposed that he owned at the particular locality, including his interest in the so-called Warehouse alley.

Mr. Howard, who negotiated the sale, testified:

"When Mr. Cunningham spoke about selling out, he did not say anything about lands or buildings or anything else, but just the whole proposition there, and my understanding was that he bought out the whole business."

Mr. Fitzpatrick, who drew the contract, testified:

"Mr. Cunningham said he was selling all his property over there, pointing to it from my office."

Defendant Cunningham testified:

"I didn't just know positively whether Kinyon or whether Howard was going to have the whole of that lot or not, and so I just slipped down there, thought it would be better to know, maybe he didn't want the whole of it, and I just slipped in and asked Kinyon if he wanted the whole lot, *and I found out he did,* and I went on over to dinner."

Neither Howard nor Kinyon knew anything about the Warehouse alley nor that there was such an alley. Defendant Cunningham did know about the alley, and understood that it belonged to him by virtue of his title deed and the adverse possession of himself and his predecessors in title. He testified that when he purchased the lot:

"Why, they sold that Warehouse alley to me.

"Q. Oh, they sold the Warehouse alley to you?

"A. Yes, sir.

"Q. Where is your deed of it?

"A. Well, I will tell you; in selling that property he conveyed the idea that there was two rods there and an alley there, that by taking possession of it that I could hold and do business on it.   *.  *  *

"Q. Then you didn't buy it of the Stewarts?

"A. Yes, yes, he said that I should have possession, told me to go and take possession of that.   *  *  *

"Q. You claimed to own it?

"A. See here; I calculated virtually that it was my property.

"Q. Yes?

"A. That is all there is of it—that is, that half of it."

Shortly before the making of the contract in question Mr. Moore negotiated with defendant for the purchase of the property and went with him to look at the property and defendant showed him—

"As near as he could where the line was between the alley and the railroad ground, how much of the shed stood on the railroad ground, and spoke about the alley through there, but he said—I said to him, 'Maybe they

would make me trouble here.' He says, 'They can't.'
He says, 'They can't take that alley away from you, *be-
cause that has been held here by this property* for so
many years. * * *

"Q. And he claimed at that time to own this alley there?

"A. Well, he said *it would always go with that prop-
erty;* it had been used there so long, so many years, he
said, it couldn't go back to the city, he didn't think."

I think it fairly appears from defendant's own testi-
mony that when he signed the contract he understood and
intended that his interest in the alley would "*go with that
property*," and that all the persons connected with the,
transaction understood that the contract covered all of the
defendant's real estate at the particular place.

I think the decree should be modified in accordance with
this opinion, and affirmed, with costs of this court to de-
fendants.

CARPENTER, C. J., and MCALVAY, MONTGOMERY, and
MOORE, JJ., concurred with BLAIR, J.