LYONS v. CHAFEY.

1. REFORMATION OF INSTRUMENTS—MUTUAL MISTAKE — EVIDENCE MUST BE CLEAR AND CONVINCING.

When it is sought to reform a written instrument on account of a mutual mistake, the evidence of the mistake and the mutuality thereof must be so clear as to establish the fact beyond cavil.

2. SAME—BURDEN OF PROOF.

In a suit for the reformation of a contract on the ground of a mutual mistake, the burden of proof rests with the plaintiff.

3. SAME—MISTAKE IN BOUNDARY LINE.

Where it was the intention of both parties to a land contract to thereby convey 39 feet of vendor's lot, a mutual mistake of 2½ feet in the location of vendor's lot line would not entitle vendee to the reformation of the contract so as to give him 41½ feet instead of the 39 feet which the contract called for.

4. SAME—LACHES—WAIVER.

By waiting for ten years after discovering the true line and until vendor had parted with his title, and then accepting deed for 39 feet from vendor's grantee, vendee waived his right to insist on a reformation of the contract.

Appeal from Ingham; Collingwood (Charles B.), J. Submitted May 4, 1922. (Docket No. 140.) Decided July 20, 1922. Rehearing denied November 2, 1922.

Bill by T. Rogers Lyons and another against M. Foster Chafey, Ransom E. Olds and Michael D. Lynch to reform a land contract and for specific performance. From a decree dismissing the bill, plaintiffs appeal. Affirmed.

*T. Rogers Lyons,* in pro. per.

*A. M. Cummins,* for defendant Chafey.

*Seymour H. Person,* for defendant Lynch.

BIRD, J. Plaintiffs sought in this proceeding to have a certain land contract reformed and then specifically enforced. After a careful examination of the record and briefs of counsel we find ourselves so nearly in the attitude of the chancellor who heard the case that we adopt his opinion as the opinion in this court:

"The bill of complaint is filed by T. Rogers Lyons and Alice, his wife, against M. Foster Chafey and others, for the purpose of reforming a certain land contract which has already merged in a deed. Plaintiffs allege that they are and have been since 1903, owners of the east two and one-half (2½) rods of lot twelve (12), block eighty-five (85) of the city of Lansing. That during the year of 1907, lot eleven (11) of the same block, lying directly south of lot twelve (12) was owned by M. Foster Chafey. Plaintiffs allege further, and it is admitted, that during November, 1907, negotiations were entered into between Lyons and Chafey for the purchase of that part of lot eleven (11) directly south of the two and one-half (2½) rods of lot twelve (12) owned by plaintiff Lyons. That during these negotiations a stake was driven thirty-nine (39) feet west of what was supposed to be the northeast corner of lot eleven (11). That at this point a fence was erected running in a southerly direction and recognized by both parties as the west boundary of plaintiff's portion of lot eleven (11). That on or about the 23d of November, 1907, plaintiff Lyons and defendant Chafey entered into a written contract whereby Chafey agreed to sell and Lyons agreed to buy the 'east thirty-nine (39) feet of lot eleven (11), block eighty-five (85).' Afterwards Chafey deeded to R. E. Olds and in May, 1919, Olds deeded to Lyons 'the east thirty-nine (39) feet of lot eleven (11), block eighty-five (85).' Plaintiffs further allege, and it is admitted that in 1909 a survey of the premises disclosed the fact that the point which was supposed to be the northeast corner of lot eleven (11), and from which thirty-nine (39) feet had been measured, was approximately two and one-half (2½) feet west of the true corner. Immediately after this discovery by the survey, plaintiff Lyons claimed and occupied all the land between the true east line of lot eleven (11) and the fence which had been established in November, 1907, making a total of forty-one and one-half (41½) feet, and plaintiff Lyons notified defendant Chafey of his claim.

"It is plaintiff's theory that the line which was established in November, 1907, by Lyons and Chafey, became the west line of his portion of lot eleven (11)

because of the mutual mistake regarding the corner post. It is further his contention that the true east line of lot eleven (11) has, by mutual agreement, become the east line of his property. Plaintiff further contends that while the contract calls for the east thirty-nine (39) feet of lot eleven (11) such wording is a mutual mistake, and that the contract, as reformed, should read, the east two and one-half (2½) rods of lot eleven (11), block eighty-five (85). The testimony showed that Lyons and Chafey measured thirty-nine (39) feet from what they supposed to be the northeast corner of lot eleven (11). That a fence was built at this point, and that Lyons went into an occupancy of thirty-nine (39) feet of lot eleven (11). It was shown by the testimony that when this mistake concerning the east line of lot eleven (11) was discovered, Lyons went into occupancy of this strip of two and one-half (2½) feet, and since that time has occupied the east forty-one and one-half (41½) feet of lot eleven (11). It was also shown that Lyons notified Chafey that he intended to occupy all of this land. Under the testimony there is no doubt concerning Lyons' state of mind and that he communicated his intention to defendant Chafey.

"It is not, however, clear under the testimony, that Chafey ever acquiesced in this claim. There were many conversations between Lyons and Chafey, apparently most of the talking was done by Lyons. Chafey in the words of Lyons grunted and Lyons assumed that he agreed. Chafey built a stone wall on his portion of lot eleven (11) and nearly on a line with the fence. On the witness stand Chafey denied that after the survey of 1909 he ever agreed to the line which Lyons claims or that he has ever acquiesced in the claim of plaintiff for more than thirty-nine (39) feet. Defendant Chafey admits that there was a mistake in locating the northeast corner of lot eleven (11), but he claims that he never agreed to deed and never expected to deed to plaintiffs more than thirty-nine (39) feet of the east end of lot eleven (11). Plaintiffs do not claim to have gained title by adverse possession.

"It is plaintiff's contention in his bill of complaint that 'the description of thirty-nine (39) feet was ar-

rived at through mutual error and the correct description should be forty-one and one-quarter (41¼) feet or two and one-half (2½) rods.' Plaintiffs in their bill seek to reform a written contract on the grounds of a mutual mistake. That such contracts may be reformed by oral evidence is not disputed. The cases cited by plaintiff are clear on that point. See *Metropolitan Lumber Co.* v. *Iron Co.*, 101 Mich. 577, and other cases cited in plaintiffs' brief. Before, however, the above case, and others cited by plaintiffs, become controlling in this matter, the court must determine the question: Was there a 'mutual mistake' which gives equity a right to interfere in the plain words of the contract? When, in the fall of 1907, Lyons and Chafey began negotiations they were both in error regarding the east line of their property, each being under the impression that it was about two and one-fourth (2¼) feet west of the true line. Lyons having at that time a deed to the east two and one-half (2½) rods of lot twelve (12) was under the impression that his east line was two and one-half (2½) feet west of the true line. This was a mutual mistake.

"Plaintiff Lyons testified that he attempted to buy from Chafey the same width of lot eleven (11) that he, Lyons, occupied in lot twelve (12). Chafey refused to sell him enough to make the west line of that part of lot twelve (12) occupied by Lyons continuous through lot eleven (11). And it was admitted by Lyons that in the line staked out by Lyons and Chafey in 1907 there would be a jog from the west line of Lyons' portion of lot twelve (12) of two and one-quarter (2¼) feet to the east. It was agreed, however, between the parties, that Chafey would buy and Lyons would sell thirty-nine (39) feet of the east end of lot eleven (11). They, Lyons and Chafey, attempted to find the west line of Lyons' portion by measuring thirty-nine (39) feet west from the supposed northeast corner of lot eleven (11). After this line was determined a fence and driveway was built and after that a contract was drawn up by Lyons and entered into by both parties for the east thirty-nine (39) feet of lot eleven (11). It is

clear that Chafey intended to sell and Lyons to buy thirty-nine (39) feet of lot eleven (11), block eighty-five (85).

"In 1909 it was discovered that the true east line of lots eleven (11) and twelve (12) were approximately two and one-half (2½) feet west of the point used as a basis for the measurement of the thirty-nine (39) feet. Plaintiff Lyons took possession of this strip of land two and one-half (2½) feet wide and sought to hold all the land up to the old line previously established, forty-one and one-half (41½) feet. Lyons directed the attention of Chafey to the matter many times and repeatedly requested Chafey to make a change in the contract which would recognize his claim. Whatever Chafey may have said or done in relation to the line established in 1907, there is no evidence that he ever offered to change the wording of the contract, or at any time offered to deed Lyons more than thirty-nine (39) feet. Thus the controversy run on for 10 years.

"It is fundamental that when it is sought to reform a written instrument on account of a mutual mistake, the evidence of the mistake and the mutuality thereof must be so clear as to establish the fact beyond cavil. *Ludington* v. *Ford*, 33 Mich. 123; *Kinyon* v. *Cunningham*, 146 Mich. 430. The burden of proof rests with the plaintiff and he must convince the court by a clear preponderance of the evidence.

"It is clear to this court that when Lyons drew the contract in question he expected to buy and Chafey expected to sell the east thirty-nine (39) feet of lot eleven (11). There is no evidence which convinces the court that Chafey ever at any time expected to sell more than thirty-nine (39) feet. The only mutual mistake was in the location of the northeast corner of lot eleven (11). Because there was a mutual mistake in locating this quarter post does not appear to this court as a reason why Lyons should gain two and one-half (2½) feet of ground. In the absence of testimony which convinces the court that more than thirty-nine (39) feet were intended to be deeded by Chafey, the west line established in 1907 cannot be the controlling factor. If perchance the true northeast corner of lot eleven (11) had been

found to be two and one-half (2½) feet west of the point assumed by Lyons and Chafey in 1907, plaintiff Lyons could have claimed and held thirty-nine (39) feet from that true corner because it is clear that Chafey contracted to sell and Lyons to buy thirty-nine (39) feet of lot eleven (11). Plaintiff has not convinced the court by the evidence given that he has any claim to more than thirty-nine (39) feet of lot eleven (11), block eighty-five (85) of the city of Lansing. It follows that the bill must be dismissed."

It may be said in addition that plaintiff discovered the error in 1909. He made no move to have the mistake corrected until his grantor had parted with the title. In 1919, with a full knowledge of the error, he accepted a deed which was in satisfaction of the land contract and placed the same of record. By these acts did not plaintiffs waive their right to insist on a reformation of the contract? This raises at least a very serious question.

The decree of the trial court is affirmed.

FELLOWS, C. J., and MCDONALD, CLARK, SHARPE, MOORE, and STEERE, JJ., concurred. WIEST, J., did not sit.