## EMERY *v.* CLARK.

1. REFORMATION OF INSTRUMENTS—INSURANCE—MISTAKE—HUSBAND AND WIFE—AGENCY—EVIDENCE.

In suit by receiver of farmers mutual fire insurance company to reform application and insurance policy so as to show ownership in defendants as tenants by the entireties, evidence *held,* insufficient to show that defendant husband who had held title individually up until about seven months previous to making application for insurance was the agent for his wife or that any mistake of fact could be charged to her, notwithstanding deeds transferring title to the parties as tenants by the entireties were not recorded until about five years later.

2. SAME—MUTUAL FIRE INSURANCE POLICY—TITLE—MUTUAL MISTAKE.

Proof that insurer was misled, or mistaken, in the belief that applicant for fire insurance in farmers mutual company was the sole owner of the property insured and that it was insuring the entire ownership does not prove mutual mistake, entitling insurer to reformation of policy, since it fails to prove mistake on part of defendants, applicant and his wife who had then owned property as tenants by the entireties for a period of seven months.

3. APPEAL AND ERROR—QUESTIONS REVIEWABLE—RES JUDICATA—REFORMATION OF INSTRUMENTS—MISTAKE—FRAUD.

In suit to reform application and policy in farmers mutual fire insurance company on ground of mutual mistake where proof fails to show a mutual mistake, an issue not raised or decided in previous case between same parties and plaintiff does not herein claim fraud on part of defendants, a matter therein adjudicated, question of *res judicata* is not discussed.

4. REFORMATION OF INSTRUMENTS—MISTAKE—EVIDENCE.

To justify reformation of a written contract upon the ground of mistake, the alleged mistake must be one of substance and of fact, must be mutual and common to both parties, the

---

Reformation for unilateral mistake, see 2 Restatement, Contracts, § 503; on subject of mistake generally, see §§ 500–505.

Evidence necessary for reformation, see 2 Restatement, Contracts, § 511.

burden of proof upon the party seeking reformation must be sustained by clear and satisfactory evidence, not a mere preponderance thereof, and claimant must establish the right to such relief beyond cavil.

5. SAME—INSURANCE POLICY—MISTAKE—HUSBAND AND WIFE—EVIDENCE.

In suit by receiver of farmers mutual fire insurance company to reform application and policy on ground of mistake so as to show ownership of property in defendants as tenants by the entireties and to subject the insured property to payment of assessment, record *held*, not to contain sufficient clear and convincing testimony to show that defendant wife either authorized or understood that her husband was insuring her interest or that defendant husband had intended to insure more than his own interest.

6. INSURANCE—TENANCY BY THE ENTIRETIES—INSURABLE INTEREST.

A husband may have an insurable interest in property held by the entireties.

7. COSTS—TIMELY BRIEF.

No costs are awarded appellees upon affirmance of a decree in chancery where they failed to file a brief timely.

Appeal from Lapeer; Dehnke (Herman), J., presiding. Submitted October 15, 1942. (Docket No. 18, Calendar No. 42,037.) Decided November 25, 1942.

Bill by John G. Emery, receiver of Lapeer Farmers Mutual Fire Insurance Company, a Michigan corporation, against Ward B. Clark and Mattie Clark to reform an application for insurance and the policy issued thereon, to establish liability for assessment, and for other relief. Decree for defendants. Plaintiff appeals. Affirmed.

*Walter S. Foster,* for plaintiff.

*Atkinson & Donnelly (Frank W. Atkinson,* of counsel), for defendants.

BOYLES, J. This is a proceeding by bill in chancery filed by the receiver for the Lapeer Farmers Mutual Fire Insurance Association seeking to re-

form an application for insurance and the policy issued thereon. Plaintiff avers that a mutual mistake was made by the association and the defendants whereby the policy was issued to defendant Ward B. Clark alone, although intended to cover property owned by Ward B. Clark and his wife, Mattie L. Clark, as tenants by the entireties. The bill seeks to reform the application and policy so as to include Mattie L. Clark as a member of the association and render both defendants subject to the receiver's assessment on the policy.

The Lapeer Farmers Mutual Fire Insurance Association was organized in 1871 for mutual fire insurance. For some years prior to 1926 defendant Ward B. Clark, as the individual owner of considerable real estate in Lapeer county, was a member of the Lapeer Farmers Mutual and had his buildings insured therein. In October, 1926, Ward B. Clark effectuated conveyances whereby the title to his real estate was placed in tenancy by the entireties with his wife. The deeds, however, were not recorded until 1932. On May 24, 1927, some seven months after the real estate was thus conveyed, Ward B. Clark surrendered his then-existing policy and made written application for a new policy. In this application, Ward B. Clark stated that the property to be insured was "my own lawful property." The association had no knowledge that the real estate had been placed in a tenancy by the entireties, and issued a new policy insuring Ward B. Clark against loss by fire on the property described in the application. The bylaws of the association printed on the back of the application stated:

"Property owned in joint title, whether real or personal, must be so expressed in the application."

In September, 1935, the association was placed in receivership. On July 27, 1940, the receiver,

plaintiff herein, pursuant to an order of the circuit court in the receivership, levied an assessment against the persons, including Ward B. Clark, who were members of the association between January 1, 1927, and the date of the receivership.

The receiver had learned that the insured property was held by Ward B. and Mattie L. Clark as tenants by the entireties and that therefore the assessment could not be collected by enforcing a lien on the property. Previous efforts to collect a judgment against Ward B. Clark individually on an earlier assessment, later held to be invalid, had been unsuccessful. The receiver thereupon filed the instant bill in chancery in October, 1940, alleging that the recitals in the application and policy of May 24, 1927, to the effect that Ward B. Clark was the owner of the property insured were the result of a mutual mistake by said association and by Ward B. Clark individually and as agent for Mattie L. Clark, that it was the intention of the association and said Ward B. Clark and Mattie L. Clark to have the application and policy show the ownership as tenants by the entireties. The amount of the assessment was $423.14 and the plaintiff asked that the application and policy be reformed accordingly and be declared to render Ward B. Clark and Mattie L. Clark subject to the assessment.

Ward B. Clark and Mattie L. Clark filed separate answers. Each denied any mutual mistake in the matter, denied that there was an intention to insure Mattie L. Clark, and averred that the policy was issued for the purpose of protecting Ward B. Clark's insurable interest in the property. Mattie L. Clark specifically averred that she had no interest of any kind in the insurance provided by the policy, and denied that Ward B. Clark acted as her agent in making the application.

To establish his claim of mutual mistake, the plaintiff called both Ward B. Clark and Mattie L. Clark for cross-examination under the statute.* Mrs. Clark admitted that the title had been placed in tenancy by the entireties and denied having any recollection of the circumstances under which the policy was procured by Mr. Clark. She testified:

"*Q.* Anything said between you and Mr. Clark regarding insurance at that time?

"*A.* No; Mr. Clark has always taken care of those affairs.

"*Q.* You remember, do you, that nothing was said about insurance?

"*A.* I say Mr. Clark has taken care of those affairs, I haven't.

"*Q.* You remember, do you, definitely, nothing was said about insurance?

"*A.* No.

"*Q.* You don't remember that?

"*A.* No.   *   *   *

"*Q.* Now, did you take an active part in the business affairs of the farm and other property owned by Mr. Clark?

"*A.* Not very much.

"*Q.* Did you know about the insurance in the Lapeer Farmers Mutual Fire Insurance Company?

"*A.* Well, I knew about it in a way, but Mr. Clark always looked after those things.

"*Q.* But you did know it was insured and that he paid periodical assessments?

"*A.* Yes.

"*Q.* And I presume you owned yourself considerable personal property that you had in the house that you lived in?

"*A.* Some.

"*Q.* And took it for granted that your clothing and your particular property, that personal prop-

* See 3 Comp. Laws 1929, § 14220 (Stat. Ann. § 27.915).—RE-PORTER.

erty that you had was insured as well as Mr. Clark's?

"*A.* Yes."

This, the only testimony claimed to show that Ward B. Clark was acting as agent for his wife, falls far short of proving agency in fact or in law. The record is barren of any other testimony tending to indicate that Mrs. Clark had any connection with the making of the application or the procuring of the insurance. Whatever may be the situation as between Mr. Clark and the association, it is not possible to glean from the record adequate proof that any mistake of fact may be charged to Mrs. Clark.

Ward B. Clark, likewise called for cross-examination under the statute, testified that he made the application for the insurance, that he knew the property was held jointly with his wife, and that the intention was to have the real estate pass to the survivor. As to the insurance, he testified:

"*Q.* And in the event of a fire at the home in which you lost your life, Mrs. Clark would be possessed of all the interests which either of you might have pertaining to the property?

"*A.* In case of my death she would.

"*Q.* Without probate proceedings, I mean?

"*A.* Yes.

"*Q.* Mrs. Clark's testimony stated that you generally looked after the business matters pertaining to the farm and such matters?

"*A.* Yes, sir.

"*Q.* And I assume that would include the payments of taxes and arranging the insurance and hiring of help and most all business matters?

"*A.* Yes.

"*Q.* Is that a fair statement, a sort of partnership where you were the managing partner in business matters?

"*A.* Well, I wouldn't say any partnership. * * *

"*Q.* So the occasion, the reason for your making out the 1927 application was to obtain the increased insurance in the items that you listed?

"*A.* Sure.

"*Q.* Well, at that time, May 24, 1927, the title of the property stood in the name of Ward B. Clark and Mattie Clark, did it not?

"*A.* Yes, sir.

"*Q.* Although the deed had not been recorded?

"*A.* Yes, sir.

"*Q.* Why then was the policy, was the application, why then did you sign an application, exhibit E, stating that the property was 'my lawful property'?

"*A.* Why, it didn't make any difference about that as far as that part was concerned. I was insured and I was paying assessments.

"*Q.* Is this a fair statement of it, it didn't occur to you that needed to be changed, there needed to be any change?

"*A.* No. * * *

"*The Court:* Now Mr. Clark, suppose you had a loss while that policy was in force and asked the company to pay the loss, and the company had said we don't have to pay you because you misrepresented the title in your application, what would have been your answer to that?

"*A.* Well, then I would have lost the insurance. It wouldn't been no good, if it turned out that way.

"*The Court:* Don't you think you would have said in that case, just a mistake, something was overlooked?

"*A.* No; I don't think I would. I just said I carried it along just as I always had; took out the insurance in my own name. It didn't make any difference whether there was a loss or wasn't, the way I looked at it. * * *

"*Q.* When you—let me put this one, when you made this application to, in 1927, May the 24th,

there was no intention on your part to do anything which would prevent Mrs. Clark from receiving all possible benefits from jointly owned property? * * *

"*A.* I don't know. I expected Mrs. Clark would get whatever did belong to her in case of death. * * *

"*Mr. Foster:* I want to make it perfectly plain.

"*Q.* In exhibit E you applied for insurance on all this property in your own name, reciting you were the lawful owner, whereas in fact, Mrs. Clark was joint owner with you in deeds which had never been recorded. I am asking you, whether in the making the application, exhibit E, you had any intention of depriving Mrs. Clark of any of her rights?

"*A.* No.

"*Q.* And when you made out this application, in 1927, you gave no thought to whether her name should appear in the application or the policy?

"*A.* No, sir.

"*Q.* But it was your intention that she and you should both be protected?

"*A.* Why, sure. * * *

"*Q.* In reference to the farm insurance in which you are an interested party, hasn't it always been your intention to have the policy protect the owner of the property, in this case, yourself and Mrs. Clark?

"*A.* Why, I couldn't say so, I expected I would be protected myself anyway.

"*The Court:* You didn't expect to be paying premiums for the benefit of anyone but the real owner, did you or on a policy that would turn out to be no good?

"*A.* I didn't give it any thought. I didn't put it that way at all. I suppose it didn't make any difference as long as it was insured, it belonged to me or someone else as long as premiums were paid, the insurance paid.

"*The Court:* You figured the company would be liable?

"*A.* Yes.

"*Mr. Foster:* To the owners of the property?

"*A.* To whoever the application shows the— whoever the policy was issued to on the property."

Later recalled in his own behalf, Mr. Clark testified:

"*Q.* Mr. Clark, in 1927, when the values on this farm properties were raised and a new estimate— new policy, or continuation of the old policy was issued to you, prior to signing the so-called application and receiving the new or continuing policy, did you discuss the matter of insurance in any way with Mrs. Clark?

"*A.* No.

"*Q.* Did Mrs. Clark ever at any time authorize you to include her name in this new or continuing policy?

"*A.* No."

We have quoted the testimony at some length because it is from the above testimony that plaintiff's proof to establish mutual mistake must be found, if it exists. There is no doubt that the association was misled, or mistaken, in the belief that Ward B. Clark was the sole owner of the property insured and that it was insuring the entire ownership in the property. However, that fact alone does not prove mutual mistake. The testimony falls short of proving that this mistake was shared by the defendants.

Plaintiff does not urge in the instant case that there was fraud on the part of defendants. Were such claim now made, we would be compelled to hold that an earlier case between the same parties where that issue was decided would be *res judicata* as to such a claim. The question of fraud was

raised and decided adversely to plaintiff in the earlier case. In view of the conclusion we reach, that plaintiff has failed to prove a *mutual* mistake, an issue that was not raised or decided in the previous case, it is not necessary to consider further the question of *res judicata*.

As early as 1869, in *Youell* v. *Allen*, 18 Mich. 107, Mr. Justice Cooley announced the rule governing the burden of proof which rests on one seeking to establish mutual mistake in certain cases:

"The question whether a material error in a written contract for the conveyance of lands can be corrected on parol evidence, in a suit for the specific performance of the contract, and performance decreed according to the understanding as found upon such evidence, is one of no little difficulty, and upon which the authorities are irreconcilably at variance. If it can be, the evidence of the mistake upon which the court should give relief ought to be so clear as to establish that fact beyond cavil. No such clear evidence appears in this case, but, if we find the mistake at all, it must be upon inferences which are not of a very satisfactory character."

While this rule was announced in a case where the question was whether a material error in a written contract for the conveyance of lands could be corrected on parol evidence, it has been generally applied by this court to various situations. In *Vary* v. *Shea*, 36 Mich. 388, 398, where the question was over the reformation of a provision in a contract to procure the discharge of a mortgage, Chief Justice Cooley again wrote:

"It was said in *Youell* v. *Allen*, 18 Mich. 107, 109, that the evidence of mistake in a written contract, on which the court should act in giving relief, ought to be so clear as to establish the fact beyond cavil."

"It is conceded that to justify the reformation of a written contract upon the ground of mistake the alleged mistake must be one of substance and of fact, and not of law; that such mistake must be proved by clear and entirely satisfactory evidence, and that a mere preponderance of evidence is not sufficient; and that the mistake must be mutual and common to both parties to the instrument." *Burns* v. *Caskey,* 100 Mich. 94, 100.

*Schlossman* v. *Rouse,* 197 Mich. 399, particularly applies to the situation now under consideration. This court there said (p. 403):

"Moreover, conceding that there was a mistake, it was not a mutual mistake, because it is conceded that defendant knew the exact width of the drug store to be only 20 feet at the time the contract was signed. Before a contract will be reformed because of a mistake in drafting the same, it must be shown by satisfactory evidence that the alleged mistake was mutual and common to both parties in interest."

Where the question of reforming a land contract was again in issue, this court in *Lyons* v. *Chafey,* 219 Mich. 493, 498, said:

"It is fundamental that when it is sought to reform a written instrument on account of a mutual mistake, the evidence of the mistake and the mutuality thereof must be so clear as to establish the fact beyond cavil. *Ludington* v. *Ford,* 33 Mich. 123; *Kinyon* v. *Cunningham,* 146 Mich. 430. The burden of proof rests with the plaintiff and he must convince the court by a clear preponderance of the evidence."

"Courts do not make contracts for parties, and this truism has given rise to the cautionary rule requiring clear and satisfactory evidence of a mutual mistake before reforming a written instru-

ment." *Lee State Bank* v. *McElheny,* 227 Mich. 322, 327.

"To reform a written instrument on account of mutual mistake, the evidence of the mistake and the mutuality thereof ought to be clear and satisfactory, so as to establish the fact beyond cavil. *Burns* v. *Caskey,* 100 Mich. 94; *Kinyon* v. *Cunningham,* 146 Mich. 430; *Lyons* v. *Chafey,* 219 Mich. 493; 34 Cyc. p. 984; 23 R. C. L. p. 367." *Crane* v. *Smith,* 243 Mich. 447.

In *DeGood* v. *Gillard,* 251 Mich. 85, Mr. Justice CLARK wrote:

"There is no mutual mistake, and hence there can be no reformation. *Kutsche* v. *Ford,* 222 Mich. 442. A contract will not be reformed on the ground of mistake not mutual. *Meade* v. *Brown,* 218 Mich. 556."

In *Schuler* v. *Bucuss,* 253 Mich. 479, Mr. Justice NORTH wrote:

"The law is thoroughly settled that solemnly written instruments entered into between competent parties should not be altered or reformed on the theory of mistake except the mistake is mutual and the evidence so clear as to establish the right to relief beyond cavil. *Youell* v. *Allen,* 18 Mich. 107; *Long* v. *Bibbler,* 225 Mich. 261; *Retan* v. *Clark,* 220 Mich. 493; *DeGood* v. *Gillard,* 251 Mich. 85."

*Droste* v. *City of Highland Park,* 258 Mich. 1, also particularly applies to the circumstances now under consideration. In that case, Mr. Justice Mc-DONALD wrote, p. 4:

"The mistake was not mutual to the parties named in the deed. In *Adams* v. *Iowa Gas & Electric Co.,* 200 Iowa, 782 (203 N. W. 229), which was an action for a reformation of a contract so as to include representations of an agent, it was said:

" 'Unless it may be said that the representation of the agent was binding upon this defendant, the alleged mistake cannot be said to be mutual. It is elementary, that if one party is acting through an agent, it is necessary that he have authority to make the stipulations alleged to have been omitted from the contract.' "

The rule to which we adhere in the instant case was again written by Mr. Justice BUTZEL in *Lahey* v. *Hackley Union National Bank,* 270 Mich. 438, 443, as follows:

"In order to reform a written instrument on the ground of mistake, the mistake must be mutual and common to both parties to the contract. *A. E. Wood & Co.* v. *Standard Drug Store,* 192 Mich. 453; *DeGood* v. *Gillard,* 251 Mich. 85; *Schuler* v. *Bucuss,* 253 Mich. 479. The burden of proof is upon the party seeking reformation, and the proof of mistake must be clear and convincing. *Miles* v. *Shreve,* 179 Mich. 671; *Lyons* v. *Chafey,* 219 Mich. 493."

The "beyond cavil" rule was added to this statement of the law by Mr. Justice BUTZEL in *Sobel* v. *Steelcraft Piston Ring Sales, Inc.* (1940), 294 Mich. 211, 217, in the following language:

"Reformation may be granted in a proper case for mutual mistake. *DeGood* v. *Gillard,* 251 Mich. 85. The burden of establishing the mistake is on the party seeking to reform. *Lahey* v. *Hackley Union National Bank,* 270 Mich. 438. The evidence must be clear and convincing and must establish beyond cavil the right to reformation. *Schuler* v. *Bucuss,* 253 Mich. 479; *Donaldson* v. *Hull,* 258 Mich. 388."

Plaintiff has failed to establish mutual mistake shared in by defendants herein. It has not been proven by clear and convincing testimony that de-

fendant Mattie L. Clark either authorized or understood that her husband was insuring her interest in the property. Nor has it been proven that defendant Ward B. Clark intended to insure more than his own interest.

Counsel for plaintiff concedes that a husband may have an insurable interest in property held by the entireties. We quote from counsel's supplemental brief:

"We had inferred from *Aetna Insurance Co.* v. *Resh,* 40 Mich. 241, that a husband had no insurable interest in property held by the entireties, but later cases hold his interest is insurable: *Miotke* v. *Milwaukee Mechanics' Ins. Co.,* 113 Mich. 166, 170; *Clawson* v. *Citizens' Mutual Fire Ins. Co.,* 121 Mich. 591, 594 (80 Am. St. Rep. 538).

"See, also, *Connecticut Fire Ins. Co.* v. *McNeil* (C. C. A.), 35 Fed. (2d) 675."

In the *Miotke Case, supra,* loss by fire had been incurred on property held by the plaintiff and his wife as tenants by entireties. The policy contained a provision that it would be void if the interest of the insured had not been truly stated, or if his interest was other than sole ownership. Judgment for plaintiff for the amount of the loss was affirmed:

"It is contended that the plaintiff should be restricted to the recovery of one-half the value of the building, inasmuch as the holding was a joint one, and his wife had an equal interest with himself. Some interesting questions are suggested by the claim. * * * In *Manhattan Ins. Co.* v. *Webster,* 59 Pa. 227 (98 Am. Dec. 332), it is held that a partner has an insurable interest to the amount of the entire stock; and in *Trade Ins. Co.* v. *Barracliff,* 45 N. J. Law, 543 (46 Am. Rep. 792), it was determined that 'a husband, in possession and enjoyment

with his wife of her real and personal property, with an inchoate right of curtesy, has an insurable interest in both, and, where the intention was evinced to insure the whole ownership, may recover the whole loss.' This case contains an interesting discussion of the subject, and asserts the doctrine that the amount to be recovered will depend, not on the loss happening to the individual interest of the assured, but on the damage accruing to whatever interests are covered by the policy, so far as the assured represents those interests, whether as his own or by the precedent authority or subsequent ratification of others. See *Waring* v. *Indemnity Fire Ins. Co.,* 45 N. Y. 606 (6 Am. Rep. 146). We think the doctrine applicable here.''

In the *Clawson Case, supra,* plaintiff likewise held title to the insured property with his wife in a tenancy by entireties. In answering the question in his application for insurance ''What is your title?'' plaintiff answered ''Deed.'' The policy was written to plaintiff alone. It likewise contained a provision that it should be void if the interest of insured was other than unconditional and sole ownership. In a suit by the husband to recover for loss by fire, judgment for plaintiff was affirmed by this court, as follows:

''The case of *Miotke* v. *Milwaukee Mechanics Ins. Co.,* 113 Mich. 166, discusses a similar question, although the circumstances under which the policy was taken were different. The plaintiff had an estate well known to the law in the entire parcel. It was not an absolute estate in fee, but it might ripen into one. The character of his holding was discussed by Mr. Justice MOORE in the recent case of *Dickey* v. *Converse,* 117 Mich. 449 (72 Am. St. Rep. 568). This was an insurable interest in the whole, and one which the defendant was bound to know might be conveyed by deed. We think this point covered by the case of *Miotke* v. *Milwaukee Mechanics Ins. Co., supra.*''

We are not here deciding the question whether either Ward B. Clark or his wife could have recovered on the policy in case of loss. We hold that plaintiff cannot reform the application and policy on the ground of mutual mistake, which would in effect make Mattie L. Clark a member of the mutual association for the purpose of making the property held by defendants as tenants by the entireties liable for the assessment.

Decree dismissing the bill of complaint is affirmed. Appellees not having timely filed a brief, no costs awarded.

CHANDLER, C. J., and NORTH, STARR, WIEST, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.