7 F.3d 234
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
NEW HAMPSHIRE INSURANCE COMPANY, Plaintiff-Appellee,
v.
A. LUURTSEMA TRUCK LINES, INC., Michigan Mutual Insurance
Company, Jeffrey Jay Ezzell, and George Wilder,
Defendants-Appellants.
 Nos. 92-1484, 92-1613, 92-1614.
 United States Court of Appeals, Sixth Circuit.
 Sept. 7, 1993.
 
 Before RYAN and BOGGS, Circuit Judges, and ECHOLS, District Judge.*
 RYAN, Circuit Judge.
 
 
 1
 Defendants appeal from the district court's entry of summary judgment for the plaintiff insurance company in this consolidated diversity action seeking a declaratory judgment and the reformation of a commercial vehicle insurance contract. Defendants contend that the district court erred in entering summary judgment for the plaintiff and by reforming the parties' insurance policy.
 
 
 2
 For the reasons stated, we shall affirm.
 
 I.
 
 3
 In its complaint giving rise to this appeal, New Hampshire Insurance Company (NHIC) sought a judgment that A. Luurtsema Truck Lines, Inc. was not entitled to NHIC insurance coverage for a tractor-trailer accident involving Jeffrey Jay Ezzell. Ezzell was severely injured on September 29, 1987, when the Luurtsema tractor-trailer in which he was riding fell from a 30 foot overpass on the Stevenson Expressway near Chicago. Defendant Michigan Mutual Insurance Company (MMIC), another Luurtsema liability insurer, filed a counterclaim against NHIC, seeking indemnification for a pro rata share of the defense costs it incurred in defending a tort claim brought by Ezzell against Luurtsema in Illinois state court. MMIC also sought reimbursement for the difference between $750,000 paid by MMIC in settlement of the Ezzell lawsuit, and $645,000, which MMIC claimed would have been its liability limit had NHIC joined in the Illinois litigation. The parties' dispute turns on the language of a commercial vehicle insurance policy issued by NHIC to Luurtsema.
 
 
 4
 Through 1984 and 1985, Luurtsema's trucking operation was insured through MMIC with primary limits of liability of $1 million and umbrella limits of $2 million. In August 1985, MMIC informed Luurtsema that it would no longer cover Luurtsema's long-haul liability exposure. Luurtsema was forced to look elsewhere for its trucking liability coverage. John Stamm, a Luurtsema employee responsible for insurance matters, turned to the Michigan Automobile Placement Facility or "assigned risk pool" because it offered the best rates. Eventually, Stamm ended up finding an alternative insurance offering sold by MMIC through the risk pool. He obtained an MMIC policy covering the company's tractor-trailers to a liability limit of $750,000.
 
 
 5
 Luurtsema's tractor-trailers and its passenger automobiles had formerly been insured under the same MMIC policy. In 1985, however, Stamm apparently believed that the assigned risk pool policy would only provide coverage for tractor-trailers. He therefore sought separate coverage for Luurtsema's private passenger automobiles. He approached Douglas McColl of the F.W. Grotenhuis Underwriters, Inc. agency, an independent insurance agent, for premium quotations for the private passenger vehicles. Ultimately, Stamm obtained for Luurtsema a business auto policy from NHIC with a $1 million liability coverage limit. The parties' intent in entering into this contract, and the policy's terms, are at the center of this dispute. Luurtsema, MMIC, and Ezzell contend that the policy Stamm sought from NHIC, through the Grotenhuis agency, was to provide additional coverage for Luurtsema's tractor-trailers. NHIC, in contrast, contends that the parties' intent was to establish a policy covering only Luurtsema's passenger automobiles and light trucks.
 
 
 6
 When the policy from NHIC eventually issued, there appeared, in the coverage space, the number "2," which indicated coverage for all owned "autos." The policy defined an auto as "a land motor vehicle, trailer or semi-trailer designed for travel on public roads." This policy, with essentially the same terms, including the number "2," was renewed by Luurtsema for two subsequent years. During this same time, coverage on Luurtsema's tractor-trailers was maintained with MMIC.
 
 
 7
 The scope of the policy's coverage was first questioned following the tractor-trailer accident in Chicago in which Ezzell was injured. The driver of the truck was defendant George Wilder; Ezzell was a passenger. On October 30, 1987, Ezzell filed suit against Luurtsema in Cook County Circuit Court in Chicago. Stamm notified MMIC of the accident on November 3, 1987, by letter, and requested that MMIC "handle the matter." NHIC was not notified of the Chicago lawsuit until June 16, 1988. The notice given to NHIC indicated that MMIC was defending Luurtsema. Consequently, NHIC did not make an appearance in the Chicago court action. Instead, it filed this action on August 31, 1990 seeking a declaratory judgment.
 
 
 8
 The Chicago litigation never proceeded to trial. On December 13, 1990, Luurtsema, MMIC, Ezzell, and Wilder entered into a court-approved consent judgment. The consent judgment provided that Ezzell would recover $1.75 million. However, in agreeing to the consent judgment, Ezzell also signed a "covenant not to execute" against Luurtsema, MMIC, and Wilder. The consent judgment provided that Luurtsema's total liability coverage was $1.75 million, $1 million under NHIC's policy and $750,000 under MMIC's policy. The consent judgment further stated that NHIC's policy provided excess coverage to the MMIC policy. MMIC tendered $750,000 to Ezzell and the covenant not to execute permitted Ezzell to execute against NHIC for the $1 million remaining on the judgment.
 
 
 9
 NHIC was not a party to the Chicago litigation. Its name did not appear as a party on the pleadings in that action and the defendants do not argue that NHIC was being sued in Chicago. Indeed, the state court judge in Chicago was careful to make a record that NHIC had not appeared in the Chicago lawsuit, and that the terms of the consent judgment were based on the facts as represented by Luurtsema, MMIC, and Ezzell.
 
 
 10
 In this action, NHIC moved the district court for entry of summary judgment, contending that it was obvious that the policy issued by it to Luurtsema was not intended to cover Luurtsema's tractor-trailers; that the number "2" on the policy's liability designation had been included by mistake; and that the number "7" should have appeared instead. The district court agreed, reformed the policy to include the liability designation "7" rather than "2" and granted summary judgment for NHIC. Defendants timely appealed.
 
 II.
 A.
 
 11
 The defendants contend that this case turns largely on the parties' intent, which should only be determined after a full trial. They argue that the district court usurped the role of fact finder by improperly drawing conclusions about the parties' intent based only on depositions, affidavits, and other documents. Defendants further contend that questions of material fact remain, principally because of deposition testimony given by Stamm. Finally, they maintain that the district court's reformation of the insurance policy was error under Michigan law. Defendants urge this court to reverse.
 
 
 12
 NHIC argues that there was never any agreement between Luurtsema and NHIC to insure long-haul tractor-trailers, and that the district court's finding that a mistake was made when the policy was issued was correct. NHIC contends that defendants produced insufficient evidence to survive a motion for summary judgment. Moreover, NHIC contends, the district court's reformation of the insurance contract was a correct application of Michigan law. NHIC urges this court to affirm.
 
 B.
 
 13
 We review a district court's entry of summary judgment de novo. National Bank of Detroit v. Shelden, 730 F.2d 421, 423 (6th Cir.1984). Summary judgment is proper where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).
 
 
 14
 It is well established under Michigan law that reformation is available as an equitable remedy in contract law. See, e.g., Bleam v. Sterling Ins. Co., 360 Mich. 208, 210 (1960). Reformation is available when an instrument
 
 
 15
 "fails to express the intentions of the parties thereto as the result of accident, inadvertence, mistake, fraud, or inequitable conduct...."
 
 
 16
 Najor v. Wayne Nat'l Life Ins. Co., 23 Mich.App. 260, 272 (1970) (citation omitted). If the ground asserted is mistake, " 'the alleged mistake must be one of substance and of fact, and not of law.' " Emery v. Clark, 303 Mich. 461, 471 (1942) (citation omitted). Moreover, the party seeking reformation bears the burden of showing the mistake by " 'clear and entirely satisfactory evidence, and that ... the mistake must be mutual and common to both parties to the instrument.' " Id. (citation omitted). An examination of the evidence introduced in the proceedings below clearly demonstrates that NHIC satisfied these requirements.
 
 
 17
 The error made was definitely of substance. The ramifications of the erroneous inclusion of the number "2," instead of the number "7," in liability designation could potentially mean a difference of $1 million for the parties. All parties would seem to concede this point. It is likewise clear that the mistake alleged by NHIC is not a mistake of law, or an error in predicting future risks which parties to a contract must always bear. The parties were not confused about an external fact or event. The alleged mistake arose in the written expression of the parties' agreement.
 
 
 18
 First, the face of the policy itself indicates that the seemingly broad liability designation indicated by the number "2" was not contemplated, because this designation is facially inconsistent with other portions of the document. For instance, the policy is a "business auto policy." NHIC produced deposition evidence that when trucks are insured it uses, as does MMIC, a "truck policy." Next, the schedule of autos covered by the policy includes only passenger vehicles; no mention of tractor-trailers is made. Moreover, the drivers listed on the policy are all office personnel from Luurtsema's headquarters. None of these persons is a long-haul truck driver.
 
 
 19
 Second, the binder attached to the policy states that only "[p]rivate passenger vehicles and three service pick-up trucks" are to be covered. Elsewhere on this same binder it states that the insurance is on "private passenger vehicle[s]."
 
 
 20
 Third, the premiums paid under the NHIC policy obviously did not include premiums for Luurtsema's tractor-trailers. NHIC, in its motion for summary judgment, produced the deposition of John Burke, its "underwriting specialist." Therein, Burke stated that
 
 
 21
 [t]he premium reflects coverage only for the scheduled autos, and not the long-haul tractor-trailers owned by the insured.... The premium for coverage of the long-haul tractor-trailers of the insured would be substantially higher....
 
 
 22
 The defendants did not rebut this assertion.
 
 
 23
 Finally, everyone involved in the issuance of the original NHIC policy to Luurtsema stated in depositions or in documentary evidence, even against their own interests, that the parties intended only to cover Luurtsema's passenger vehicles and light trucks. Stamm wrote a note to Luurtsema's MMIC agent on April 7, 1987, after the NHIC policy issued. Therein he stated "Cars are currently with New Hampshire." (Emphasis added.) McColl also wrote Stamm a letter on May 18, 1989, wherein he stated
 
 
 24
 the policy should have shown Symbol 7 all along. It was your & my original understanding that we only wanted to cover private passenger cars and pick-up trucks. We never intended to cover tractors or trailers. Other coverage was always in force to cover the big rigs.
 
 
 25
 Stamm made no reply to this letter, and the defendants produced no evidence, in opposition to the motion for summary judgment, rebutting it. It is also worth noting that during the approximately three years the policy was in effect, Luurtsema frequently notified NHIC about changes in passenger vehicles and passenger-vehicle drivers under the policy. No communication from Luurtsema was ever made regarding changes with tractor-trailers, though presumably drivers and rigs changed during that time. The only explanation for this is that Luurtsema did not believe its tractor-trailers were covered by NHIC.
 
 
 26
 The defendants' reliance on the Stamm affidavit for the creation of a material issue is misplaced. In this "new era" of summary judgment, a mere discrepancy between opponents is insufficient to take an issue to the trier of fact. Rather, where the " 'evidence ... is so one-sided that one party must prevail as a matter of law,' " Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir.1989) (citation omitted), entry of summary judgment is appropriate. Stamm's affidavit, even though it contradicted earlier evidence obtained from Stamm during discovery, was insufficient to raise a "genuine issue as to any material fact," Fed.R.Civ.P. 56(c), about the parties' intent. See Jones v. General Motors Corp., 939 F.2d 380, 384-85 (6th Cir.1991).
 
 
 27
 In conclusion, there is simply no evidence sufficient for trial that Luurtsema and NHIC intended to insure Luurtsema's tractor-trailers on the policy issued by NHIC. The district court's entry of summary judgment was appropriate, and its reformation of the policy was not error.
 
 III.
 
 28
 For the foregoing reasons, we AFFIRM the judgment of the district court.
 
 
 
 *
 The Honorable Robert L. Echols, United States District Judge for the Middle District of Tennessee, sitting by designation