CHARLES E. BURNS ET AL. v. CHARLES W. CASKEY ET AL.

*Contract—Reformation—Bona fide purchaser—Consideration.*

1. To justify the reformation of a written contract upon the ground of mistake in drafting the same, the alleged mistake must be one of substance and of fact, and not of law, and must be proved by clear and entirely satisfactory evidence, and not by a mere preponderance, and must be mutual and common to both parties to the contract.

2. Mortgagees who take an assignment of a contract as collateral security for the mortgage debt, upon which they are to apply

whatever amount they are able to collect on the contract, are not purchasers in good faith for value, and have no standing in a court of equity as *bona fide* purchasers, with a right to be protected as such, in a suit brought against their assignor to reform the contract on the ground of mistake in drafting the same; citing *McGraw v. Solomon,* 83 Mich. 449.

3. Where, in such a case, the reformation of the contract reduces the amount due the assignor thereon, and it appears that the mortgagees, as a part of the consideration for the assignment, surrendered to the assignor certain notes and mortgages which they held as collateral and additional security for the mortgage debt, they will have the right to demand of the complainants an amount sufficient to meet the balance of their claim, if any, remaining after exhausting their securities aside from the contract, and applying the proceeds on said debt, not exceeding, however, the amount of complainants' indebtedness on the contract before its reformation.

Appeal from Delta. (Stone, J.) Argued December 12 and 13, 1893. Decided April 17, 1894.

Bill to reform a contract and for an injunction. Defendants appeal. Decree modified and affirmed. The facts are stated in the opinion.

*Clark & Pearl,* for complainants.

*C. J. Pailthorp* and *B. T. Halstead* (*Taggart, Knappen & Denison,* of counsel), for defendants.

LONG, J. The bill was filed in this case to reform a certain written contract executed between complainants and defendant Caskey, as well as to enjoin defendants Curtis and Wylie, the assignees of the contract, from prosecuting a suit at law thereon. The contract is as follows:

" This agreement, made this 6th day of May, 1889, by and between Charles W. Caskey, of Petoskey, Michigan, of the first part, and Charles E. Burns, John K. Stack, John J. Rigney, and George Preston, of the city of Escanaba, Michigan, as follows:

" The first party agrees to sell and convey to the second parties, to each an undivided one-fifth (1-5) interest in the

steam propeller Cyclone, now owned by the said first party, in consideration of payment to him by them of the sum of $10,000, subject, however, to a mortgage covering said Cyclone, amounting to $4,500, and four-fifth (4-5) of which said mortgage shall be paid by the said second parties.

"It is also agreed that the second parties shall sell and convey to the first party an undivided one-fifth (1-5) interest in the steam propeller Nellie, now owned by the second parties, in consideration of the payment by him to them of the sum of $2,800.

"It being the intention of this agreement that each of the above parties shall hold an undivided one-fifth interest in both of the above-named boats, and whatever sum in excess of said one-fifth interest shall have been paid in by the first party shall be repaid to him in freight or other business carried by said boats.

"It is also agreed that the proceeds of the mail route now owned by the first party between Harbor Springs and St. James shall become a portion of the earnings of the said boats.

"It is further agreed that on or before May 20, 1889, this agreement shall be carried out by the execution and delivery to each of the parties aforesaid the proper papers conveying to each the interests above specified.

"It is also agreed that depositing said papers with F. D. Mead, of Escanaba, Michigan, within the time above named, shall be deemed a compliance with the terms of this agreement.

"Witness the hands of the parties hereto the day and year first above written.

"In presence of

"CHAS. W. CASKEY.
"CHARLES E. BURNS.
"JOHN K. STACK.
"JNO. J. RIGNEY.
"GEORGE PRESTON."

The complainants' contention is that the contract so signed did not set out the true agreement between the parties.

Defendant Caskey lived at Petoskey, and owned a propeller called the "Cyclone." He had been running it in a freight business between Petoskey and Escanaba. Com-

plainants resided at Escanaba, and in the spring of 1889 purchased a steamer called the "Nellie," to run on the same route. By previous agreement, Mr. Caskey went to Escanaba, and the parties there arranged the matter of putting the two boats into a joint venture. There was a mortgage on the Cyclone of $4,500, and complainants' contention is that after more or less talk between the parties it was agreed that the complainants should buy from Caskey four-fifths of the Cyclone for $8,000,—$10,000 being the total valuation of the boat, which four-fifths interest would amount to $8,000,—less four-fifths of the mortgage, which the complainants agreed to pay for Caskey, deducting this four-fifths of the mortgage from the $8,000. The four-fifths interest in the mortgage amounted to $3,600, which, deducted from the $8,000, left $4,400. It was further agreed, according to the complainants' contention, that Caskey was to buy from the complainants a one-fifth interest in the Nellie for $2,800. That was also to be deducted from the $8,000, the purchase price of the four-fifths interest in the Cyclone. This would leave $1,600 due Caskey over and above paying for the four-fifths of the mortgage, and also paying for a one-fifth interest in the Nellie. Complainants' contention is that the defendant Caskey pretended ·to be in a hurry to leave Escanaba on an early train, and great haste was made to get the contract reduced to writing; and John J. Rigney, one of the complainants, and defendant Caskey, went to the office of F. D. Mead, an attorney at Escanaba, to have the contract drawn, and there stated to him in a hurried manner the contract, and the paper was drafted. The paper was sent over to the store of John K. Stack, one of the complainants, and, after · hastily running it over, was signed; and it was not noticed that serious mistakes had been made in its drafting, and the mistakes were not discovered until

100 Mich.—7.

the defendant Caskey wrote a letter to complainant Stack, claiming that complainants owed him $9,000. Then the complainants immediately looked up the contract, and found that, instead of its setting forth that they were to buy four-fifths of the propeller Cyclone at the rate of $10,-000 as the total valuation of the boat, and that they were to pay four-fifths of the mortgage, and deduct it from the purchase price as agreed, the contract set forth, in substance, that they were each to purchase an undivided one-fifth interest, amounting to four-fifths interest, for $10,000, "subject, however, to a mortgage covering said Cyclone, amounting to $4,500, and four-fifths of which said mortgage shall be paid by the said second parties;" and that the contract also set forth that complainants were to convey a one-fifth interest in the Nellie, "in consideration of the payment by him to them of the sum of $2,800." They immediately went to Royce & Waite, attorneys, about the matter, and also to Mr. Mead, asserting that the contract was not drawn as the agreement was made. December 30, 1889, Caskey assigned this contract to defendants Wylie and Curtis, who took the assignment, not as a purchase, but as a sort of additional security for a very small amount, if anything.

Defendant Caskey contends that the contract made and signed sets out the true agreement. His claim is that he not only put the Cyclone into the joint enterprise, but that he had a valuable contract from the government to carry mail between certain points, for which he was being paid $48 per week, and that the Cyclone had a good freight business, worth $5,000 for the season, both of which were put in, while the Nellie had no business whatever.

Three of the complainants were sworn, and testified in their own behalf to the arrangement as above set forth. Mr. Mead, who drafted the contract, testified as a witness

for complainants, and gave evidence which tended to show that the mistake was made in drawing the contract, and corroborates to some extent complainants' testimony as to what the actual agreement was. The case was heard in open court, and a decree entered in favor of complainants, correcting the mistake, and enjoining defendants Curtis and Wylie from prosecuting any suit upon the contract.

The court found the contract agreed upon to be as follows:

"The first party agrees to sell and convey to the second parties, each, an undivided one-fifth interest in the steam propeller Cyclone, now owned by the said first party, in consideration of payment to him by them of the sum of $8,000, subject, however, to a mortgage now covering said Cyclone, amounting to $4,500; it being agreed that four-fifths of said mortgage shall be paid by said second parties for said first party, namely, $3,600, the remaining $900 of said mortgage to be paid by first party, and the said $3,-600 so to be paid by the said second parties upon said mortgage is to be deducted from the $8,000 to be paid said first party by said second parties as the purchase price of the four-fifths interest of said propeller Cyclone.

"It is also agreed that the second parties shall sell and convey to the first party an undivided one-fifth interest in the steam propeller Nellie, now owned by the second parties, in consideration of the payment by the first party to them of the sum of $2,800, to be also deducted from the said $8,000 so to be paid by said second parties to said first party, as aforesaid; leaving a balance due said first party in the transaction between the first and second parties in the purchase and sale of the said boats as aforesaid of $1,600.

"It being the intention of this agreement that each of the above parties shall hold an undivided one-fifth interest in both of the above-named boats, and whatever sum in excess of said one-fifth interest shall have been paid in by the first party shall be repaid to him in freight or other business done by said boats.

"It is also agreed that the proceeds of the mail route now owned by the first party between Harbor Springs and St. James shall become a portion of the earnings of the said boats.

"It is further agreed that on or before May 20, 1889, this agreement shall be carried out by the execution and delivery to each of the parties aforesaid of the proper papers conveying to each the interest as above specified.

"It is also agreed that depositing said papers with F. D. Mead, of Escanaba, Michigan, within the time above named, shall be deemed a compliance with the terms of this agreement."

It would be unprofitable to set out the testimony at length. We are satisfied that the court below was not in error in reforming the contract. It is conceded that to justify the reformation of a written contract upon the ground of mistake the alleged mistake must be one of substance and of fact, and not of law; that such mistake must be proved by clear and entirely satisfactory evidence, and that a mere preponderance of evidence is not sufficient; and that the mistake must be mutual and common to both parties to the instrument. Parol testimony may, however, be given to show that the written instrument does not express the real intent of the parties. As was said by the court below, the defendant's testimony is not corroborated in any material matter by the witnesses, or by any circumstance. His position really is that the value of the Cyclone was fixed at $17,000; that is, he was to get $10,000 for a four-fifths interest, which makes the value $12,500 over and above the mortgage of $4,500. This would be placing her value at $3,000 more than the Nellie. This is contrary to all the evidence except the defendant's. The claim, on the other hand, is, and we think it is conclusively shown, that the Nellie was to be valued at $14,000, and the Cyclone at $10,000. The mistake in drafting the contract is so palpable that it is impossible to escape the conviction that Caskey understood it to be as the complainants now assert it. It is needless to cite authorities to support the proposition that a court of equity will correct such a mistake and reform the

instrument when the evidence clearly shows what the real instrument was; but it may be said that the evidence of mistake on which the court should act in giving relief ought to be so clear as to establish the fact beyond cavil. *Vary v. Shea,* 36 Mich. 388. We think, with the court below, that it is so established in this case.

But one other question remains. It is claimed that Curtis and Wylie are good-faith purchasers of the contract, and that their rights as such must be protected. The court below found that they were not purchasers in good faith, as they received the assignment of the contract as collateral security for a debt against Caskey, which debt was already secured by a real-estate mortgage, and they were to apply upon such indebtedness whatever amount they were able to collect under this contract. If their debt was wholly an antecedent one, and it was to secure such antecedent debt that the assignment was made to them, they did not take as purchasers in good faith for value, and could not stand in a court of equity as *bona fide* purchasers, with a right to be protected as such. *McGraw v. Solomon,* 83 Mich. 449.

But it is claimed by counsel for defendants that a new consideration was also parted with by Curtis and Wylie in taking the assignment of the contract from Caskey. The court below found that some small notes were turned over to Caskey by them at that time, but that it did not clearly appear in what amount. Mr. Wylie was called as a witness, and testified as follows on direct examination:

" *Q.* Was there anything further in the way of consideration moving from yourselves to Mr. Caskey? and, if so, state what it was.

"*A.* I would not attempt to state accurately just what securities we held at the time, but we had a number of mortgages, accompanied by notes, that were left as collateral.

" *Q.* Mortgages made by Mr. Caskey?

"*A.* No, sir; given to him by parties he had dealings with. Some of those he wanted returned to him.

"*Q.* And some of them were returned, I understand, when this paper was taken?

"*A.* Yes, sir; some were returned at the time, and some later."

Mr. Wylie's attention was again called to that subject on cross-examination, and he testified:

"*Q.* You also had some notes and mortgages he held from other parties as collateral to this mortgage you had on the homestead?

"*A.* We had those provisional.

"*Q.* You had them as collateral from him?

"*A.* Yes, sir.

"*Q.* When you made this arrangement to take the assignment of this contract, and to collect it and apply it on his indebtedness, he wanted you to surrender those small notes and mortgages, and take this assignment in its place?

"*A.* Yes, sir; some of them. I have forgotten just what ones.

"*Q.* Do you remember the amount of these little notes and mortgages,—the mortgages you surrendered?

"*A.* No, sir; I could not remember them. I remember the names of some of them.

"*Q.* About how much, would you think?

"*A.* I wouldn't like to undertake to estimate those. Less than $1,000, perhaps.

"*Q.* Those you surrendered to Mr. Caskey on taking the assignment?

"*A.* Yes, sir; some of them.

"*Q.* The total amount would be less than $1,000?

"*A.* Yes, sir; I think so."

This was substantially all the testimony on the subject of a new consideration. We are unable, however, to agree with the court below in saying that no new consideration was shown. It does appear, as we think, that some notes and mortgages of value were surrendered by Wylie and Curtis to Caskey as a consideration, in part at least, for the assignment of the contract against complainants. Equitably they have the right to be protected. It is

apparent that they took the assignment as security for the payment of the amount of their claim against Caskey. They, however, held other securities for the same debt. They must first exhaust those securities, and apply the proceeds upon their debt, before calling upon the complainants to pay. The injunction will be retained, restraining the action at law until they have exhausted such securities, at which time, if their claim thus secured against Caskey is not extinguished, they will have the right to demand of the complainants an amount sufficient to meet the balance of their claim, not exceeding the amount, however, in which complainants would be indebted to Caskey under the contract before its reformation.

With this modification, the decree of the court below will be affirmed. Complainants will recover their costs of this Court against Caskey. Defendants Wylie and Curtis will recover their costs against complainants in both courts.