## DILLIE *v.* LONGWELL.

1. ADVERSE POSSESSION—PERMISSIVE USER—RECOGNITION OF PRO-
PRIETOR'S RIGHTS.

Title does not pass by adverse possession, when the occupation
is by consent of the owner, and his rights are recognized by
a conveyance of adjacent premises to a purchaser by the ad-
verse claimant, without including the premises to which title
is asserted, and which, it is contended by the claimant, were,
in fact, transferred by the conveyance.

2. REFORMATION OF INSTRUMENTS—MISTAKE—EVIDENCE REQUIRED.

While a deed may be reformed when it is satisfactorily proven
that a mutual mistake has been made, such fact must be
clearly made to appear.

3. SAME.

And evidence of the grantee that a parcel was to ·be included
in the deed, contradicted by the grantor, and not satisfac-
torily supported by other proofs, is insufficient to warrant a
decree reforming the instrument so as to include the omitted
parcel, on the ground of mistake.

Appeal from Van Buren; Des Voignes, J.    Submitted
October 5, 1910.    (Docket No. 3.)    Decided December 7,
1910.

Bill by Nathaniel E. Dillie and Mary E. Dillie against
Edgar B. Longwell, Jessie Longwell, Thomas Welch and
Rowena Welch to reform a deed and enjoin an action of
ejectment.    From a decree for complainants, defendants
appeal.    Reversed.

*Thomas J. Cavanaugh* and *A. Lynn Free,* for com-
plainants.

*David Anderson* and *Glenn E. Warner,* for defend-
ants.

HOOKER, J.    The complainant is in possession of cer-

tain lands upon which he entered under a deed from one Gleason. They consist of two 40-acre parcels, a 3-acre parcel, and a piece of about 4 acres. His grantor had the legal title to all except the latter. He had no paper title to that. The situation will be more easily understood by an examination of the annexed map:

Parcels marked " 1," " 2," " 3," and " 4 " are the parcels mentioned. That marked " 4 " only is in dispute. It consists for the most part, of low marsh ground along the Paw Paw river. At the time Gleason's deed was made by Mrs. Welch, she owned all four parcels, and also other lands east of the river in the S. E. ¼ of the N. W. ¼ of the section. Complainant asks that her deed to Gleason ( his grantor ), be reformed and made to include par-

cel 4, upon the ground that, when Gleason bought, it was understood by both parties to the negotiation that parcel 4 was a part of the land sold and purchased, and that it was omitted through inadvertence and mistake. To establish his case he endeavored to prove:

*First.* That one Clapp was the owner by deed of the N. W. ¼ and S. W. ¼ of the N. W. ¼ of Sec. 12, being 80 acres, as well as other lands on the section west of 12; that he took possession as early as 1865, and from that time until 1891 he occupied and used for pasture and cutting marsh grass parcel 4, to which he had no paper title, and the complainant makes the claim that he (Clapp) thereby acquired title by adverse possession.

*Second.* That on April 2, 1891, he sold and deeded to Welch the two 40-acre parcels.

*Third.* That Welch or his wife, at that time, owned parcel 3, which he had bought from Harrison, but did not own parcel 4, which Harrison had the paper title to, and attempted to convey to him by the same deed, but failed through uncertainty in the description.

*Fourth.* That Welch deeded all of these lands to his wife.

*Fifth.* That in March, 1893, Welch negotiated a sale of what he called the Clapp farm to Gleason, expressly stating that the portion on the S. W. ¼ of the N. W. ¼ of the section, extended to the river, and that on March 24, 1893, in accordance with their arrangement, he caused his wife to make a deed of the land conveyed which included parcels 1 and 2, which had belonged to the Clapp farm, and parcel 3 which had not. Parcel 4 was not included.

*Sixth.* That Gleason entered and occupied parcel 4, and he and Dillie have continued to do so, though both Welch and Longwell have disputed Dillie's right.

*Seventh.* That Mrs. Welch deeded parcel 4 to Longwell, by warranty deed, on October 15, 1897, and that he has brought ejectment against complainant.

*Eighth.* Complainant contends that Longwell took deed with notice of his rights.

*Ninth.* That since the making of these deeds, the village of Paw Paw has acquired, by purchase from Dillie, flowage rights upon parcel 4, and have now an artificial lake or pond upon the same.

The learned circuit judge in stating his conclusions

found: That Clapp acquired title to parcel 4 by adverse possession. That the description in the Welch deed to Gleason recognized Clapp's former ownership of parcel 4. That the conduct of the Welches after the sale to Gleason in not questioning his and Dillie's title tended to strengthen the claim that the omission of parcel 4 from the deed to Gleason was a mistake.

We have endeavored to give these conclusions full weight, but we cannot agree with them. *First.* The claim that Clapp acquired title by adverse possession is not clear. Grant that he occupied the premises in dispute, there is an absence of proof that the occupation was adverse or even hostile, and, in denial of the owner's right, Harrison owned and sold and Welch bought it during Clapp's occupancy, and there is testimony indicating that the occupation was by consent of Harrison and therefore not hostile. Clapp did not convey it to Welch when he sold to him, which indicates that he (Clapp) was not claiming title against him at that time. Moreover, if he had acquired a title, not having sold it to Welch, it is in Clapp yet, for he did not convey to Welch, and Welch would have no title in it, being lost through Clapp's adverse possession, and the reformation of the deed would be useless, for it would convey no title. That finding would be fatal to complainant's case.

Our own conclusion is that Clapp has never divested the title to parcel 4 from Harrison or Welch, through adverse possession, and when he sold the 80 acres did not claim title to parcel 4, and that it belonged to Welch. We think there is no force in the claim that Welch treated it as a part of the Clapp farm, which it clearly was not.

*First.* Because the deed did not include it.

*Second.* Because he and his wife soon gave a warranty deed of it to Longwell, which negatives the thought that they acquiesced in the claim of Gleason and Dillie.

*Third.* Because West flatly denies the intention and understanding that it was to be included, and disputes the testimony of Gleason as to their negotiations.

Again we may state, though it is of little importance, that the description in Harrison's deed to Welch is a perfect description, and includes parcel 4.

The relief prayed in the bill involves the equivalent of adding to a deed of conveyance, thereby increasing the amount of land conveyed by it, by virture of parol testimony. A deed is a solemn instrument, usually made with deliberation, and, while it may be reformed when it is satisfactorily proven that a mutual mistake has been made, such fact must be made to appear clearly. In the case of *Youell* v. *Allen*, 18 Mich. 109, COOLEY, C. J., said:

"The question whether a material error in a written contract for the conveyance of lands can be corrected on parol evidence, in a suit for the specific performance of the contract, and performance decreed according to the understanding as found upon such evidence, is one of no little difficulty, and upon which the authorities are irreconcilably at variance. If it can be, the evidence of the mistake upon which the court should give relief ought to be so clear as to establish that fact beyond cavil."

The same language was repeated by the same judge in *Vary* v. *Shea*, 36 Mich. 398. In *Burns* v. *Caskey*, 100 Mich. 100 (58 N. W. 644), Mr. Justice LONG said:

"That such mistake must be proved by clear and entirely satisfactory evidence, and that a mere preponderance of evidence is not sufficient, and that the mistake must be mutual and common to both parties to the instrument."

It is undeniable that, at the time Gleason took his deed, Mrs. Welch was the owner in fee of all these parcels, unless Clapp still owned parcel 4. Admitting that he did not, she did. She deeded to Gleason parcels 1, 2, and 3 only.

There is no evidence that she personally ever had an intention to convey more, but conceding that she was bound by her husband's intent and understanding, when he negotiated the sale, and caused the deed to be written, we have a conflict of the testimony between Gleason and Welch. The only important corroborating fact in support

of Gleason is the fact that the deed to him mentions the southern boundary of parcel 3 as being land "formerly owned by Clapp" when in fact it was this parcel 4. Welch said that the scrivener made that description and that it was a mistake. It was not an unnatural inference on the part of the scrivener who doubtless knew that Clapp had occupied it. That does not throw much light on the question of the intention; certainly it was not clear and satisfactory proof, justifying the taking a parcel of land from Mrs. Welch and giving it to Dillie.

We are constrained to reverse the decree and dismiss the bill, with costs of both courts. It is so ordered.

BIRD, C. J., and OSTRANDER, MOORE, and MCALVAY, JJ., concurred.