NAJOR *v.* WAYNE NATIONAL LIFE INSURANCE COMPANY

1. CONTRACTS—REFORMATION—EQUITY—APPEAL AND ERROR—TRIAL DE NOVO.

   Reformation of a contract is equitable in nature and on appeal is heard *de novo* on the record, but the Court of Appeals gives great weight to the findings of the trial judge and will not reverse unless they are clearly erroneous (GCR 1963, 517.1).

2. INSURANCE—POLICY DATE—APPLICATION DATE—CONFLICT.

   A conflict in the dates of an insurance policy and of the application for insurance does not make the insurance policy date controlling where the specific language of the policy and of the state insurance code provides that an insurance policy and the application shall constitute the entire contract (CLS 1961, § 500.4014).

3. INSURANCE—CONTRACTS—PATENT AMBIGUITY—EVIDENCE.

   Trial court properly admitted extrinsic evidence in order to resolve a patent ambiguity created by the difference in the issue date on decedent's application for life insurance and the date of issue on his insurance policy.

4. CONTRACTS—WRITTEN INSTRUMENT—REFORMATION—GROUNDS.

   Mutual mistake is not the exclusive ground for granting reformation of a contract since a written instrument may be reformed where it fails to express the intentions of the parties thereto as the result of accident, inadvertence, mistake, fraud, or inequitable conduct on one side and mistake on the other.

---

REFERENCE FOR POINTS IN HEADNOTES

[1–7] 43 Am Jur 2d, Insurance § 356 *et seq.*

5. INSURANCE—ISSUE DATE—REFORMATION.

   Reformation of the issue date on decedent's life insurance policy so that it conformed with the issue date on his application for insurance was proper where plaintiff's prayer for reformation was based on mistake, error and inadvertence, and the evidence supported reformation on one or more of those grounds.

6. ESTOPPEL—INSURANCE—REFORMATION.

   Plaintiff-beneficiary was not estopped from seeking reformation of decedent's life insurance policy containing patent ambiguity created by conflicting issue dates on his policy and on his insurance application merely because he accepted that contract and failed to read it for 11 months, where the testimony was undisputed that he only glanced at the policy briefly, returned it to the sales agent for safekeeping, and never requested predating on his policy, or even discussed it with his sales agent.

7. INSURANCE—UNILATERAL PREDATING.

   An insurer cannot predate a life insurance policy unilaterally; consequently, where decedent neither requested nor consented to defendant insurer's predating his insurance policy one year earlier than the date on his insurance application, his policy was in force for one year from the application date plus the 31-day grace period and therefore had not lapsed for nonpayment of premium on the date of his death which occurred within that period.

Appeal from Wayne, Charles Kaufman, J. Submitted Division 1 December 10, 1969, at Detroit. (Docket No. 6,279.) Decided April 24, 1970. Leave to appeal denied July 14, 1970. 383 Mich 802.

Complaint by Teresa Hanna Najor against Wayne National Life Insurance Company, a Michigan corporation, and Alexander Hamilton Life Insurance Company of America, a Michigan corporation, for recovery under a contract of life insurance. Judgment for plaintiff. Defendants appeal. Affirmed.

*Garan, Lucow & Miller,* for plaintiff.

*Butzel, Eaman, Long, Gust & Kennedy (John L. Vanker, Jr.,* and *John B. Weaver,* of counsel), for defendants.

Before: LESINSKI, C. J., and LEVIN and DANHOF, JJ.

DANHOF, J. This is an action to recover under a contract of life insurance issued by Wayne National Life Insurance Company (hereinafter referred to as Wayne National) to the named insured, William George Najor. The widow and named beneficiary, Teresa Hanna Najor, is the plaintiff. After issuance of the policy, Alexander Hamilton Life Insurance Company of America (hereinafter referred to as Alexander Hamilton) merged with Wayne National and took over all of its existing obligations under policies previously issued. The essential issue for consideration by the Court is whether the contract of insurance issued on the life of William Najor had lapsed for nonpayment of the premium on the date of death.

The issue arises because there is a patent ambiguity between the "issue date" of 12–28–65 on the application for the life insurance and the "date of issue" on the policy which is 12–28–64. Only one year's premium of $1500 had been paid prior to William Najor's death on March 6, 1966. If the life insurance policy was in force for one year from the issue date in the application plus the 31-day grace period in the policy, the contract of insurance had not lapsed for nonpayment of premium on the date of death, March 6, 1966. The same is true if the policy is considered to have been in force from the date that William Najor passed the medical examination on March 24, 1965. However, if the life

insurance policy was in force for one year plus the 31-day grace period from the date of issue typed in the policy, 12–28–64, then the contract of insurance had lapsed in January, 1966, prior to the insured's death in March, 1966.

Plaintiff commenced suit on August 4, 1966 asserting that the date of issue, 12–28–64, on the policy had been placed there by error, mistake or inadvertence by the defendant, by or through its agents and employees, or in the alternative was placed on the policy at the direction of defendant's sales agent who acted without the control, consent, or knowledge of William Najor. Plaintiff prayed for judgment on the policy and that the policy be reformed to show a date of issue of March 24, 1965. On March 21, 1968 plaintiff filed an amendment to the complaint adding a prayer that the policy be reformed to show a date of issue of 12–28–65. Plaintiff filed a second amendment to the complaint on August 7, 1968 asserting that the policy was uncertain, ambiguous and confusing as to the issue date, date of issue, and effective date. Plaintiff asked that the uncertainty, ambiguity and confusion be resolved against the defendant and that judgment be granted plaintiff.

Defendant denied that any error, mistake or ambiguity existed and defended on the basis that the policy had lapsed for nonpayment of premiums.

The jury returned an advisory verdict as allowed under GCR 1963, 509.4 recommending reformation of the contract in favor of the plaintiff. Following the jury verdict the trial judge independently ruled in favor of the plaintiff and specifically found that it was not the intention of the parties that the policy be predated to December 28, 1964, and that recovery on the reformed contract would be allowed on either the basis of the March 24, 1965 medical examination

date or the December 28, 1965 date. The trial judge specifically found that there was no evidence that the insured ever said anything to the agent or anyone else acting for or on behalf of the defendant about wanting the policy dated 12–28–64. For the purpose of the record the court did in fact reform the contract of insurance to bear the date of December 28, 1965, and a judgment was entered in favor of plaintiff.

Defendant filed a motion for a new trial or entry of a judgment notwithstanding the verdict. It was denied. A timely claim of appeal was then filed in this Court.

This action for reformation of a contract is equitable in nature and while it is heard *de novo* on the record by this Court, we give great weight to the findings of the trial judge and will not reverse unless they are clearly erroneous, *House* v. *City of Bloomfield Hills* (1969), 18 Mich App 184; GCR 1963, 517.1.

At the time of trial, only two witnesses were called to testify. Plaintiff introduced into evidence the policy file of Wayne National and the testimony of John Harris, a second vice-president and senior underwriting man of Alexander Hamilton, who was called by the plaintiff as an adverse witness. Harris was not in the employ of Wayne National at the time of the issuance of the contract of insurance. Wayne National called as its only witness, Edward Najor, its sales agent and brother of the deceased. Their testimony will be discussed later.

Relevant portions of the application for life insurance signed by William Najor on February 20, 1965 are as follows:

In the upper right-hand corner the printed words "ISSUE DATE" appear. On the printed line following is written "12–28–65."

Block 4 of the application reads:

"4. Date of Birth and Age
    Month ___7___ Day ___3___ Year ___32___
    Age to nearest Birthday ___32___ "

Block 7 of the application reads:

"7. Sum to be        Term
    Insured $28064 Rider $_____ Total $28064"

Block 8 of the application reads:

"8. Mode of Payment and
    Amount to be paid:

[ x ]   An.      $ 1500      [ ]   Mthly   $_____
[ ]     S–An.    $_____    [ ]   M.B.D.  $_____
[ ]     Qrtly    $_____    [ ]           $_____
Cash Herewith   $ 150.00                           "

All of the numbers in the foregoing blocks were inserted in ink on the actual application.

Below the 25 numbered blocks for information and above the signature of the insured appear two paragraphs of printed material. The portion relevant to this appeal reads:

"I also agree as follows: That the policy hereby applied for shall not take effect unless I am in good health at the time of its delivery to me, provided that if this application is approved by the Company and policy issued as applied for, and provided the first premium has been paid, *the insurance applied for herein shall be effective from the date of the medical examination* \* \* \* and that each statement made herein by whomsoever it may be written, is full, true and complete." (Emphasis supplied.)

On the reverse side of the application under the heading "Agent's Report" and the subheading "Ad-

ditional remarks or instructions" appears the following in ink: "Issue policy as of 12–28–65." This is signed at the bottom by Ed Najor, Agent-Representative.

Under the general provisions of the policy appears the following:

"The Contract—This policy is issued in consideration of the application and of the payment of premiums as provided. The policy and the application, a copy of which is attached to and made a part of the policy, constitute the entire contract. All statements made by the Insured or on his behalf shall, in the absence of fraud, be deemed representations and not warranties, and no such statement shall be used in defense of a claim under this policy unless it is contained in the application and a copy of the application is attached to this policy when issued.

"Modification of Contract—Only the President or the Secretary of the Company has power to change, modify or waive the provisions of this policy, and then only in writing. The Company shall not be bound by any promise or representation heretofore made by or to any agent or person other than as specified above."

The policy carries the date of issue of 12–28–64 and a benefit date of 12–28–64.

Two days after the insured's medical examination was completed Wayne National applied for reinsurance. The reinsurance cession states the "policy date" as 12–28–65. The reinsurance cession has columns for listing the reinsurance amount and life premiums for five years. At the top of these columns indicating the policy year has been typed "65," "66," "67," "68" and "69." These have been written over with a pen so as to read "64," "65," "66," "67," and "68." The work sheet in Wayne National's records relative to this policy reads, "Date Issued 4–2–65."

Wayne National's premium billing card reads, "Date Issued 4–2–65." Additionally, in the lower right-hand corner of this billing card is the following printed block with the dates in ink:

"Ext.   Amt.   2–28–66   (three illegible letters)
Ins. To        12–28–65
Lapsed
Reinstated _____        "

On defendant's carbon copy of a form letter regarding nonpayment of premium, addressed to William Najor at the address on the application for insurance, is the following in the upper right-hand corner:

| "DATE | March 3, 1966 |
|---|---|
| POLICY NUMBER | 8440 |
| PREMIUM DUE DATE | December 28, 1965 |
| TOTAL PREMIUM(S) | $1,500.00 |
| BENEFIT ACCUMULATIONS | 626.53 |
| NET PREMIUM DUE | 873.47" |

The first column is printed and the second column is typewritten.

John Harris was qualified as an expert witness. He testified that the terms "effective date," "issue date," "date of issue," "policy date," and "date issued," could be used interchangeably in the life insurance business, but that they did not mean the same thing with respect to this policy, that "Ext. Ins." could mean "extended insurance" and that it had in the other companies he had worked for, that the policy had a provision for automatic premium loan which means that value in the policy may be used to pay the premium if the insured doesn't pay it, and that the words "benefit accumulations" generally mean cash value. Harris also testified that in-

surance premiums are figured on a basis of the applicant's nearest birthday, that William Najor's calendar age at the time of the application for insurance was 32, that his age to his nearest birthday was 33, and that in order to issue the policy on insured on an insurance age of 32 it would have been necessary to date the policy back.[1]

Harris testified further that a policy applied for on February 20, 1965, with premium paid by March, 1965, and a medical exam taken in March, 1965 would never be issued to take effect in December, 1965. He also stated that if as an underwriter an application such as the one in this case had come to him, he would have predated the policy without checking with the insured because the age 32 on the application along with the specific instruction which contained an error in the year showed that that was what the applicant wanted.

Harris testified that predating would have benefited deceased by getting him a cheaper premium and a higher face amount although he would have paid about $375 for three months coverage when the defendant had no risk because the insured was alive.

The agent's manual of Wayne National states p 6 under subheading "AGE,"

"The insurance age of the applicant is determined by his birthday nearest to the date of the application. Double-check this before submission.

"The policy provides that 'if the age of the Insured has been mistaken, the amount payable shall be such as the premium paid would have purchased at the rate for the correct age.'"

CLS 1961, § 500.4018 (Stat Ann 1957 Rev § 24.14018) provides that when an insured's age has been understated the amount payable under the pol-

---

[1] CLS 1948, § 500.4046 (Stat Ann 1957 Rev § 24.14046).

icy is that which the premium would have purchased at the correct age.

The agent's manual of Wayne National states p 4:

*"The Application*
"6. The agent cannot change a signed application without the signed consent of the applicant.
"7. If any change is made, it must be initialed by the applicant."

Edward Najor testified that at the time of the insurance application he was a highly successful sales agent for Wayne National, had won a new car award from Wayne National for his sales efforts on their behalf, and had written approximately a half million dollars worth of insurance during the two months he had been employed by Wayne National. He testified that all of the insurance contracts that he had sold prior to the one sold to William Najor had been contemporaneously dated, that is, dated as of the date of the application if no medical examination was required, or dated as of the date of the medical examination if one was required.

Edward Najor also testified that all of the handwriting on the application was his, except for the signature of the applicant, that the original application relating to a death benefit sum of $28,064 for a $1500 premium was an error on his part based on a misreading of the applicable rate chart and that the sum should have been $35,080. That error was picked up in the underwriting department and the application was amended to read $35,080 and the policy was actually issued in this amount. Edward Najor testified that the discrepancy of approximately $7,000 had nothing to do with the policy age of the applicant, that is, whether or not he was 32 or 33, but rather represented merely a misreading of the rate chart. He also said that the insertion of the age "32" in the application was an error on his

part based on a confusion of the terms calendar age and insurance age and was not intended to manifest predating.

Edward Najor testified that as to the dating of the insurance contract that he, the agent, had entertained at one time or another three separate intentions as to the date, that is, predating, postdating, and contemporaneous dating (that being the date of passing the medical examination since one was required of this applicant). He testified further that postdating the policy would have given the insured a greater period of time during which to earn and save the substantial sum required for the second annual premium and a greater period of time in which to pay off a bank loan which had been applied for by the insured in order to raise the sum of $1,350 which had been borrowed in order to pay the initial premium; that the bank credit loan plan was part of the established method of financing payment of premiums approved and set up by Wayne National; that contemporaneous dating of the contract of insurance would have given the insured immediate coverage as of date of the passage of the medical examination and was by far the usual and accepted method of dating contracts of insurance; that after predating the policy the insured would get an earlier insurable age from a positive standpoint, but from a negative standpoint the insured would be wasting 25 per cent of his premium dollar, that is, $375, during a period that he was alive and needed no insurance; that the difference in premium between age 32 and age 33 for a policy in the amount in question was only $50 per year and, therefore, it would take the insured seven to eight years to get his money back.

The sales agent testified further that his ultimate intention was to predate the policy, but he never

discussed this with the applicant, and that his manifested intention to Wayne National as to the date of the insurance contract was that it be postdated to December 28, 1965. He said he was familiar with the contents of the agent's manual as to specific instructions being necessary for predating or postdating of a contract of insurance, and that in fact he never gave the underwriting department of Wayne National any instructions as to predating the contract and the only instructions he did give them was an instruction for them to postdate the policy to December 28, 1965. He testified that he had no specific discussions with the insured as to the date of the policy and that any general discussions would have been in terms of postdating the policy by reason of the insured's limited financial position at the time and the necessity on his part to borrow money for the initial premium payment.

Edward Najor testified that he and William Najor lived at the same home when the contract of insurance was written and that on April 7, 1965 Edward Najor momentarily handed the policy along with an Amendment of Application form to William Najor who signed the amendment which changed the amount of insurance to $35,080. The insured then returned both the policy and the amendment to Edward Najor without reading the policy.

The insured moved out prior to the time that premium notices due were received at the home in December, 1965 by Edward Najor. He testified that he knew the insured was having financial difficulties and that the first bank loan for the initial annual premium was delinquent, and therefore he elected not to deliver the premium due notices to the insured. He testified that he never brought the premium due notices to William Najor's attention in any way.

On appeal defendant has asserted that there is no ambiguity in the contract, and that the policy is controlling if there is an irreconcilable conflict between the application and the policy.

Defendant's position is without merit in the face of the specific language of the general provisions of the policy quoted, *supra,* and Section 4014 of the Insurance Code of 1956[2] providing that the policy *and* the application shall constitute the entire contract. The difference in the "issue date" and "date of issue" on the application and policy created a patent ambiguity, and the trial court quite properly admitted extrinsic evidence in order to resolve that ambiguity. See *Hall* v. *Equitable Life Assurance Society of the United States* (1940), 295 Mich 404; *Wadsworth* v. *New York Life Insurance Company* (1957), 349 Mich 240.

Defendant also argues that in order to grant reformation of a written contract the mistake must be mutual, and that there was no mistake on the part of defendant. Mutual mistake is not the exclusive ground for granting reformation.

"A written instrument may be reformed where it fails to express the intentions of the parties thereto as the result of accident, inadvertence, mistake, fraud, or inequitable conduct, or both fraud and mistake, fraud or inequitable conduct being on one side and mistake on the other. Conversely, in the absence of satisfactory proof of accident, fraud, or mistake, there is no basis for a court of equity to reform an instrument."

45 Am Jur, Reformation of Instruments, § 45, p 609. Similarly, see 13 Appleman, Insurance Law and Practice, § 7609, pp 365–371. Plaintiff's prayer for reformation was not based solely on the theory of mistake, but included error and inadvertence as

---

2 CLS 1961, § 500.4014 (Stat Ann 1957 Rev § 24.14014).

well.   However, the exhibits and testimony adequately supported the trial court's decision, to reform the date of issue on the policy so that it conformed with the issue date of 12–28–65, whether based on error, mutual mistake, or inadvertence.

Finally, defendant claims plaintiff should be estopped from seeking reformation because of the insured's acceptance of the contract and his failure to read it for 11 months.

The cases relied upon by defendant in support of that position are factually distinguishable from the present case.   In none of them was there a patent ambiguity in the date on the application and the policy.

Factually closer is *McMaster* v. *New York Life Insurance Company* (1901), 183 US 25 (22 S Ct 10; 46 L Ed 64) wherein five policies of life insurance were dated December 18, 1893 whereas the applications were dated December 12, 1893.   The life insurance company contended that McMaster's acceptance of the policies estopped his representative from denying the date therein.   The Court's opinion states:

"Bearing in mind that McMaster had made no request of the company in respect of antedating the policies, and was ignorant of the interpolation of the agent, and ignorant in fact, and not informed or notified in any way, of the insertion of December 12 as the date for subsequent payments, he had the right to suppose that the policies accorded with the applications as they had left his hands, and that they secured to him, on payment of the first annual premiums in advance, immunity from forfeiture for thirteen months.   And the agent assured him that this was so.

"The situation being thus, we are unable to concur in the view that McMaster's omission to read the policies when delivered to him and payment of

the premiums made constituted such negligence as to estop plaintiff from denying that McMaster by accepting the policies agreed that the insurance might be forfeited within thirteen months from December 12, 1893."

Similarly, we find no basis for estoppel in the present case. The testimony was undisputed that the insured only glanced at the policy briefly and then returned it to the sales agent for safekeeping, and that he never requested predating, or even discussed it with the sales agent. Under the circumstance that the insurer had called to the attention of the insured a change in the policy from the application and required the insured to expressly consent in writing to the change, the insured had no reason to suppose that any other change had been made.

An insurer cannot predate a life insurance policy unilaterally, and so there was no necessity for the insured to check the date of issue on his policy since there is no evidence that he requested or consented to predating it.

Affirmed, costs to plaintiff.

All concurred.