KIDDER v COLLUM

1. REFORMATION OF INSTRUMENTS—MISTAKE—MUTUAL MISTAKE—BURDEN OF PROOF.

Reformation of a written instrument on the ground of mistake is proper where the mistake is mutual and common to both parties to the contract; the burden of proof is upon the party seeking reformation and the proof of mistake must be clear and convincing.

2. CONTRACTS—AMBIGUITIES—CONSTRUCTION.

An ambiguous writing generally must be construed most strongly against the party drafting it.

3. CONTRACTS—AMBIGUITIES—INTERPRETATION.

The interpretation of the words used in a contract must faithfully adhere to whatever meaning remains after an ambiguity is identified.

4. REFORMATION OF INSTRUMENTS—MISTAKE—LIMITED REFORMATION—BURDEN OF PROOF.

A mistake in the description of land conveyed in a land contract may be reformed where the mistake is acknowledged by the seller, who prepared the land contract, even though the purchaser is unable to sustain the burden of proof necessary to support his claim for more extensive rewriting of the contract.

Appeal from Allegan, Wendell A. Miles, J. Submitted Division 3 March 4, 1975, at Grand Rapids. (Docket No. 19663.) Decided May 28, 1975.

Complaint by Wayne B. Kidder against Leslie A. Collum and Gladys M. Collum for reformation of a

REFERENCES FOR POINTS IN HEADNOTES
[1, 4] 54 Am Jur 2d, Mistake, Accident, or Surprise § 1 *et seq.*
[2] 17 Am Jur 2d, Contracts § 276.
[3] 17 Am Jur 2d, Contracts § 274.

land contract. Judgment for plaintiff. Defendants appeal. Reversed and remanded.

*Cunningham, Hann & Marquis,* (by *Donald H. Hann* and *Thomas H. Thornhill),* for plaintiff.

Leslie A. Collum and Gladys M. Collum, *in propriis personis.*

Before: D. E. HOLBROOK, P. J., and BRONSON and M. J. KELLY, JJ.

BRONSON, J. Plaintiff-appellee, Wayne Kidder, bought a parcel of lakefront property on land contract from defendants-appellants, Leslie and Gladys Collum, in 1968. The following description was contained in the land contract:

"75 feet in width of Lakeshore Property described as Lots 22 and 21 and the north 25 ft of Lots 19 and north 25 feet of Lot 20. The 25 ft N of Lots 19 and Lots 20 and the Lots 22 and 21 shall extend to 20 ft from the west side of the now existing ditch known as the county drain. Sec 29 T3N R16W Saugatuck Twp Allegan county, Mich."

In 1972 Kidder instituted this equitable action, seeking to have the above description reformed, as follows:[1]

"All of Lots 22 and 21 and the north 1/2 of Lots 19 and 20, Birchmoor Subdivision, Township of Saugatuck, County of Allegan, State of Michigan."

Kidder alleges that the land contract, which was prepared by Mrs. Collum, "does not embody the final agreement of the parties". The trial judge

---

[1] Kidder made certain other requests for relief which are not subjects of this appeal.

agreed and granted the requested relief. The Collums have appealed by right, insisting that the evidence introduced at trial does not support a finding that the parties ever intended to effect a transfer of all of Lots 22 and 21 or all of the adjoining north one-half of Lots 19 and 20.

Reformation of a written instrument is available to correct mistakes under the following conditions:

" 'In order to reform a written instrument on the ground of mistake, the mistake must be mutual and common to both parties to the contract. [Citations omitted.] The burden of proof is upon the party seeking reformation, and *the proof of mistake must be clear and convincing.* [Citations omitted.]' " *Lahey v Hackley Union National Bank,* 270 Mich 438, 443; 259 NW 130 (1935), quoted in *Emery v Clark,* 303 Mich 461, 473; 6 NW2d 746 (1942). (Emphasis supplied.)[2]

Kidder alleges that the description contained in the land contract to which he is a signatory is erroneous. He alleges further that the mistake is mutual, *i.e.,* that the parties intended to insert the description which he offers as a replacement.

He testified at trial that the Collums offered to sell and intended to convey in accordance with his description. That testimony was contradicted in full by both Mr. and Mrs. Collum. The other evidence introduced by Kidder does not strongly support his claim.

In the first place, the description in the land contract itself indicates that something less than the full extent of the numbered lots was being conveyed. The fact that Mrs. Collum prepared the

[2] For other cases holding that proof of mutual mistake must satisfy a higher standard, *see Dykstra v Huizinga,* 362 Mich 420, 424; 107 NW2d 767 (1961), *Schoenfield v Veenboer,* 234 Mich 147, 163; 207 NW 898 (1926), *Burns v Caskey,* 100 Mich 94, 100; 58 NW 642 (1894), *Vary v Shea,* 36 Mich 388, 398 (1877), *Youell v Allen,* 18 Mich 107 (1869).

land contract is said by Kidder to require us to invoke the rule that an ambiguous writing must be construed most strongly against the party drafting it. While we subscribe to that general proposition, the fact is that the description used by Mrs. Collum, whatever it means, surely cannot fairly be read to include *all* of the numbered lots. The interpretation of the words used in a contract must faithfully adhere to whatever meaning remains once the ambiguity is identified. The ambiguity in the description used by Mrs. Collum concerns merely the *extent of* the limitation intended, not whether a limitation was intended at all. While Mrs. Collum did not clearly phrase the intended limitation, there can be no doubt that *some* limitation was intended by the use of the words "shall extend to 20 feet from the west side of the now existing ditch".

That the Collums never intended to convey the whole of the numbered lots appears more clearly from the other exhibits. Early in the negotiations Mrs. Collum provided Kidder with a brief description of the property offered for sale. This handwritten memorandum, introduced as plaintiff's Exhibit 3, includes the words "depth about 60 feet back of pump house". Kidder introduced this exhibit to show that the Collums intended to sell more property than that described in the land contract. Mrs. Collum testified, on the other hand, that this description was part of an earlier offer which was rejected by Kidder. Moreover, even assuming that the Collums intended to convey as indicated in the handwritten memorandum, there would remain some 60 feet retained by the Collums.[3] In short, the very fact—assuming it to be a fact—that the

---

[3] The pump house is approximately 120 feet west of the lots' eastern boundary.

Collums intended to convey the property with a "depth about 60 feet back of [the] pump house" indicates that they did not intend to convey the whole of the lots.

Plaintiff's Exhibit 4 provides further support for this interpretation. That exhibit is an offer of purchase, again prepared by Mrs. Collum, which formed part of the parties' negotiations. It contains the following language: "The depth of Lots 20 and 21 would extend back to and including the Power lines back of the pump house." Kidder suggests once again that the use of this language indicates an abiding intent on the part of the Collums to convey more than that described in the land contract.[4] With that we have no quarrel. However, it does not show that the Collums intended to sell the whole of the lots. On the contrary, it once again demonstrates that the Collums intended to limit the amount of land to be transferred to Kidder.

The only other evidence which even begins to support Kidder's allegation is a pair of tax bills from 1970 and 1971, received and paid by Kidder. These tax bills were issued by Saugatuck Township and described the property assessed as:

"N 1/2 of Lot 19 also N 1/2 of Lot 20 also Lot's 21 & 22 Birchmoor Subdivision Sec 29 T3N R16W (70)"

---

[4] Kidder also suggests that because there are two sets of power lines behind the pump house, the Collums may have intended to convey all of the property up to and including the second set of power lines. However, the second set of power lines is approximately 40 feet *east* of the easternmost border of Lots 20 and 21, some 160 feet east of the pump house. The first set of power lines is directly back of the pump house. It would require a tortuous interpretation indeed to suppose that by using the words "power lines back of the pump house" Mrs. Collum was ignoring the first set of power lines directly behind the pump house and referring instead to the second set of power lines located 40 feet beyond the lot line!

This indicates that the township officials thought that Kidder owned what he now claims the Collums intended to sell him. Kidder did pay these taxes. However, this evidence, without more, does not indicate that the Collums intended to convey the property so described. The Collums denied knowledge of Kidder's having paid taxes on the portions of the lots they claimed to have retained. They testified that they did not provide the township officials with a description of the transferred property, but assumed Kidder would do so. They relied on the description incorporated in the land contract, supposing that Kidder would have it recorded and the township officials would then use its description to make the appropriate assessment. They also believed that they had been paying the taxes on the retained portion all along. Kidder did not have the land contract recorded until sometime in 1972.[5] The record does not clearly indicate who was responsible for providing the township officials with the property description contained in the tax bills. Both Kidder and Mrs. Collum admit talking to a Mr. Cartwright, the township treasurer. Both deny supplying him with the erroneous description. Under these circumstances, the tax bills are inconclusive evidence at best of the Collums' intent.

We have included this rather lengthy analysis of the evidence introduced at trial in order to explain our conclusion that Kidder has failed to discharge the burden of proof imposed upon those who seek the reformation remedy. There is insufficient evidence to support a finding that the parties agreed to a sale of the whole of the numbered lots. See *Long v Bibbler,* 225 Mich 261; 196 NW 349 (1923).

---

[5] According to Kidder's testimony, at the time of trial the township still had not corrected the erroneous description in the tax bills.

The judgment ordering reformation of the land contract as prayed for by Kidder is accordingly reversed.[6]

Though Kidder's request for a wholesale rewriting of the land contract must be denied, a more limited reformation order should be entered to correspond to a stipulation made by the Collums. See *Dykstra v Huizinga,* 362 Mich 420, 424; 107 NW2d 767 (1961). They have admitted all along that they did make a mistake in describing the property in the land contract. It appears that as described the pump house and well which the Collums acknowledge they intended to include in the transfer to Kidder are not included. It is said that if the description is altered to read "shall extend to 20 feet *easterly* from the *east* side of the now-existing ditch", the pump house and well will be included in the manner contemplated by the parties. Our examination of Exhibit A (a survey of the property) reveals that measuring 20 feet east from the east side of the ditch may be insufficient to include the well. It appears, in fact, that such a conveyance will split the well down the middle. However appealing such a decree might be, we conclude that only a remand will enable the trial court to finally determine a description matching the intent of the parties. The parties are hereby directed to submit to the trial court a description of the transferred parcels which will encompass sufficient property to include the pump house and well. This description must also make both the pump house and the well accessible to Kidder for purposes of maintenance and inspection. The trial

[6] Kidder's claim that he is a victim of misrepresentation is without merit. He did not show that the Collums knew that the land contract did not accurately express his intention as to the terms to be embodied therein, and he did not show that the Collums knew his claimed intention. *See Woolner v Layne,* 384 Mich 316, 319; 181 NW2d 907 (1970).

court is hereby ordered to reform the land contract to include a property description which satisfies the conditions set forth in the two preceding sentences.

Reversed and remanded. Costs to appellants.