CAPITOL SAVINGS & LOAN ASSOCIATION v PRZYBYLOWICZ

Docket No. 29770. Submitted June 14, 1977, at Lansing.—Decided May 22, 1978.

Defendants Richard S. Przybylowicz and his wife Maureen secured a residential mortgage loan from plaintiff Capitol Savings & Loan Association. Plaintiff's representative told defendants that to repay the twenty-five year mortgage loan at a 9% interest rate the monthly payment would be $251.76 and the mortgage loan application, the mortgage commitment letter and the mortgage note itself contained these same terms. Defendants had sold their former home before they entered into a building agreement for the new home. When the first mortgage payment on the new home was due the plaintiff discovered that the payment schedule actually required approximately a 7-3/8% rate of interest and demanded that the defendants execute a new note with monthly payments of $289.53 resulting in a 9% interest rate. Defendants refused. Plaintiffs filed suit in Oakland Circuit Court seeking a declaratory judgment that the defendant's monthly payments be modified to reflect a 9% interest rate. Plaintiff's motion for summary judgment to this effect was denied and an order of declaratory judgment was entered, John N. O'Brien, J., that the contract be reformed to require a rate of interest resulting in 300 monthly payments of $251.76. Plaintiff appeals. *Held:*

Defendants justifiably relied on plaintiff's expertise in setting the payment schedule since such calculations were quite complicated and the errors not easily discoverable by the layman defendants.

Affirmed.

1. Appeal and Error—Court of Appeals—Equity—De Novo Review.

The Court of Appeals reviews equity cases *de novo* and does not

References for Points in Headnotes

[1] 27 Am Jur 2d, Equity §§ 266, 267.
[2] 66 Am Jur 2d, Reformation of Instruments §§ 1–6.
[3] 66 Am Jur 2d, Reformation of Instruments § 54.
[4] 66 Am Jur 2d, Reformation of Instruments § 85.
[5, 6] 61 Am Jur 2d, Pleading §§ 308–313.

modify or reverse unless convinced it would have reached a different result had it occupied the position of the trial court.

2. REFORMATION OF INSTRUMENTS—EQUITY—CONTRACTS—MUTUAL MISTAKE—INTENTION OF PARTIES—ACCIDENT—INADVERTENCE.

A court of equity may reform a contract where there is clear evidence of a mutual mistake, or in other appropriate circumstances; a written instrument may be reformed where it fails to express the intentions of the parties thereto as the result of accident, inadvertence or mistake.

3. APPEAL AND ERROR—REFORMATION OF INSTRUMENTS—MORTGAGES—INTEREST—ERRONEOUS CALCULATIONS.

A trial court did not err in reforming the terms of a residential mortgage contract to require a lower interest rate where the terms of the mortgage were in error as a result of miscalculations by a representative of the plaintiff, who is in the business of lending money, and where such calculations were quite complicated and any errors not easily discoverable by the layman borrower who justifiably relied upon the plaintiff's expertise in setting the payment schedule.

4. CONTRACTS—MISTAKES—MORTGAGES—SCRIVENER'S MISTAKE DOCTRINE—EMPLOYEES.

The "scrivener's mistake" doctrine is not available to a plaintiff for the correction of a mistake in a mortgage contract made by the plaintiff's employee where the employee was not acting for both parties to the mortgage when the mistake was made.

5. PLEADING—COMPLAINT—AMENDMENT—COURT RULES.

Leave to amend a complaint is to be freely given when justice so requires (GCR 1963, 118).

6. APPEAL AND ERROR—MOTIONS—AMENDMENT—COMPLAINT—RECISION—MORTGAGES—AVAILABLE OPTIONS—PRIOR POSITIONS.

A trial judge did not abuse his discretion in denying a plaintiff's motion for leave to amend a complaint to add a count for recision, in an action for a declaratory judgment that a mortgage contract should be reformed, where recision was not an available option since there was no way to restore the parties to their prior positions.

*Milton F. Cooney,* for plaintiff.

*Yuille, Zeleznik, Plourde & Russell,* for defendants.

Before: D. E. Holbrook, Jr., P. J., and Allen and D. R. Freeman,* JJ.

D. E. Holbrook, Jr., P. J. In this case we must make the difficult choice of allocating a loss between an innocent party and a party who made an innocent mistake.

There is no dispute about the basic facts. Defendants approached the plaintiff savings and loan institution about obtaining a residential mortgage loan of $34,500. Plaintiff's representative told defendants that to repay a 25-year mortgage loan at a 9% interest rate the monthly payment would be $251.76. This same combination of figures appears in the mortgage loan application, the mortgage commitment letter and in the mortgage note itself. The figures in the loan application were undoubtedly dictated by plaintiff's representative and the other two documents were prepared by plaintiff.

Stated quite simply, the problem is that this combination of figures is hopelessly inconsistent—payments of $251.76 per month for 300 months will not pay off a $34,500 loan at a 9% interest rate. Defendants sold their former home and entered into a building agreement for a new home. When the first mortgage payment was due, plaintiff discovered the inconsistency and demanded that defendants execute a new note and pay the amount, $289.53 per month, which plaintiff claims should have been used in the first place. When defendants refused plaintiff's demands, plaintiff filed suit.

The complaint requested a declaratory judgment and a reformation of the contract on the grounds of mutual mistake. Defendants answered, claiming

_____

* Circuit judge, sitting on the Court of Appeals by assignment.

the mistake was unilateral on the part of the plaintiff and that plaintiff was engaging in fraud and deception by demanding a higher monthly payment than agreed. Defendants contend they relied on plaintiff's calculations and representations that 300 payments of $251.76 would pay off a $34,500 loan at a 9% rate and that plaintiff is estopped from demanding any greater monthly amount. In order to correct the inconsistent figures, defendants requested the interest rate be reformed so that 300 monthly payments of $251.76 would discharge their $34,500 obligation.

In a written opinion the trial judge agreed with defendants.

"This is a proceeding which is equitable in nature and the Court feels that the burden must be placed on the party responsible for the error, and whose superior position of knowledge and control requires it to assume resulting hardship or economic loss, since it is too late to undo the transaction.

"This Court is of the opinion that the mortgage obligation should be reformed to provide an interest rate which will satisfy the loan obligation, within the specified twenty-five (25) years at the specified payment of Two Hundred Fifty One and 76/100 ($251.76) Dollars."

An order of declaratory judgment was entered consistent with the judge's opinion. We agree with the trial court.

This Court reviews equity cases *de novo*, but does not reverse or modify unless convinced it would have reached a different result had it occupied the position of the trial court. *Mazur v Blendea,* 74 Mich App 467, 469; 253 NW2d 801 (1977), *Ford v Howard,* 59 Mich App 548, 552; 229 NW2d 841 (1975).

A court of equity may reform a contract where

there is clear evidence of a mutual mistake, *Ross v Damm,* 271 Mich 474, 481; 260 NW 750 (1935), *Kidder v Collum,* 61 Mich App 281, 283; 232 NW2d 384 (1975), or in other appropriate circumstances, *Najor v Wayne National Life Ins Co,* 23 Mich App 260; 178 NW2d 504 (1970), *lv den,* 383 Mich 802 (1970).

" 'A written instrument may be reformed where it fails to express the intentions of the parties thereto as the result of accident, inadvertence, mistake' ". 23 Mich App at 272.

It is clear the inconsistent terms in the mortgage note cannot be reconciled and that at least one term must be reformed. Unfortunately there is no perfect solution. Either the defendants will be required to pay almost $40 a month more than they anticipated and for which they budgeted or the plaintiff will be forced to absorb a loss due to a lowered interest rate (approximately 7-3/8% rather than 9%).

The combination of a number of equitable considerations leads us to conclude that the interest rate, rather than the monthly payment, should be reformed. As noted above plaintiff's representative told defendants what the terms would be and defendants applied for a mortgage loan on the basis of those terms. Plaintiff prepared the mortgage commitment letter and the mortgage note which essentially confirmed the inconsistent figures. Defendants were led to believe that payments of $251.76 per month would satisfy their loan obligation.

Calculations of the proper monthly payments to satisfy a long term debt at a specified interest rate are quite difficult to make and indeed plaintiff admits it resorts to tables to determine payment

amounts. Plaintiff is in the business of lending money and engages in such mortgage transactions all the time. As a matter of course plaintiff calculates interest rates and determines payment schedules. Defendant Richard Przybylowicz, according to the loan application, has an eleventh grade education and is employed as a surface grinder at a tool and die shop. We find a helpful analogy in the case of *Hetchler v American Life Ins Co,* 266 Mich 608; 254 NW 221 (1934), in which an insurance company made some erroneous calculations of the date of coverage under a policy and advised the insured by letter that he was to be covered through a certain date. The insured died before that date and, discovering its error, the insurance company refused to pay the beneficiaries. In concluding the insurance company was estopped from denying liability on the policy, the Court said:

"The fact that the representations of the company here relied upon were not made fraudulently, but were due solely to a mistake in computation, does not operate to prevent the raising of an estoppel. It is commonly held that although the party making the representations was ignorant or mistaken as to the real facts, if he was in such a position that he ought to have known them, ignorance or mistake will not prevent an estoppel. [Citations omitted.] In the instant case defendant had all the facts and figures before it from the time of the first letter to the insured until his death, almost six years later. Under the circumstances, the error was the result of defendant's own negligence, and knowledge of the real facts must be imputed to the company.

"It cannot be said that the insured was negligent in not discovering the error, or that he was charged with knowledge as to the time when his policy could expire. He had a right to rely on defendant's statements in the two letters written to him by the company. It is well-nigh impossible for the ordinary layman to understand the intricacies of actuarial accounting. The insurance

company itself even deemed it necessary to have its figures checked by a university professor. The alleged mistake is not a palpable one that could be easily discovered." *Hetchler, supra,* at 613–614.

The calculation of the proper monthly payment on a long term debt is also quite complicated and the plaintiff's error was not one easily discoverable by defendants. Defendants justifiably relied on plaintiff's expertise in setting a payment schedule and on plaintiff's repeated representations that $251.76 a month would repay the loan.

While plaintiff argues the parties contemplated a 9% interest rate and that therefore the interest rate should control the monthly payment figure, we believe the ordinary consumer applying for a mortgage loan is more concerned with a monthly payment which will fit within the purchaser's budget. A consumer has no control over the mysterious fluctuations in interest rates but he or she can decide whether a monthly payment is or is not affordable. Defendants contemplated a contract which would require them to pay $251.76 a month.

We address several of plaintiff's arguments. Plaintiff argues vigorously that a court is without power to make a new contract never contemplated by the parties. All the cases cited by plaintiff, however, militate just as strongly against plaintiff's prayer for reformation of the monthly payment—to an amount never contemplated by defendants. Plaintiff next argues that the "scrivener's mistake" doctrine allows a court of equity to correct human error. In order for this doctrine to apply the scrivener must be acting for *both* parties. *Miles v Shreve,* 179 Mich 671, 679; 146 NW 374 (1914). Since the mistake was one made by plaintiff's employee, the "scrivener's mistake" doctrine is not available to plaintiff. Finally plaintiff

relies on *Drysdale v Marheine,* 240 Mich 529; 215 NW 329 (1927), which allowed reformation of an option based on an error in mathematical computation. We find this case distinguishable on the grounds that the error involved was so glaring— requiring one party to pay $150,000 rather than $38,890—that there was no question that there was a simple copying mistake. The instant case is much more like *Hetchler, supra,* where the erroneous calculation was not obvious and not easily checked by a layman.

Balancing the equities on each side leads us to conclude the interest rate on the mortgage note should be reformed so that the defendants will discharge their obligation by making 300 monthly payments of $251.76. Recognizing the potential for fraud in cases where a party deliberately conceals an error from the other contracting party, we narrowly confine our holding to the combination of factors in this case.

Finally plaintiff contends its motion to amend its complaint to add a count for recision was improperly denied by the trial court. In general, leave to amend is to be freely given when justice so requires, GCR 1963, 118. In plaintiff's motion for rehearing the trial judge stated that basically he had made a decision on the merits since there was really no factual dispute. Recision would have been an appropriate and actually a preferred remedy had defendants not sold their former home and entered into a building agreement for their new home. Since there was no way to restore defendants to their prior position, recision was not an available option and the trial judge did not abuse his discretion in denying plaintiff's motion for leave to amend.

Affirmed.